IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KADIN HAWKEYE LEWIS,<br><br>Defendant. | CR 23-143-BLG-SPW<br><br>ORDER ON MOTION IN LIMINE |

Before the Court is Defendant Kadin Hawkeye Lewis's Motion in Limine (Doc. 76). On April 21, 2025, the Government gave notice that they intended to offer certain evidence found in Lewis's trailer home during the criminal investigation under Rule 404(b). (Doc. 68). Lewis now asks the Court to preclude the Government from introducing evidence related to the uncharged homicide of John Doe, writings from Lewis's journal, and photographs of spray-painted symbols and writings on the wall from Lewis's trailer home. (Doc. 77 at 5, 8).

The motion is fully briefed and ripe for review. (Docs. 77, 78). For the following reasons, the Court grants in-part and denies in-part Lewis's motion.

I.  **Background**

On September 19, 2022, law enforcement received reports of a body seen in Lewis's trailer home that appeared to have a bullet hole in the back of their head.

1

(Doc. 68 at 2; Doc. 78 at 6). Officers discovered a deceased John Doe inside the trailer home and later identified him as a former boyfriend of Lewis's mother. (Doc. 68-1 at 1). According to the investigators, John Doe was killed "execution style." He was found with four bullets in the top of his head and one in the back of his head. (*Id.*).

After determining that John Doe was deceased, investigators continued to investigate Lewis's trailer home. Officers observed writings on the walls that contained racially charged language and symbols, including swastikas, SS bolts, figures in KKK robes, the 14 words ("We must secure the existence of our people and a future for white children.") and various racial slurs. (*Id.* at 1–2). Investigators also discovered several journals and writings throughout the home. (*Id.* at 2). Lewis addressed several writings to Nikolas Cruz, the Parkland High School shooter, where he declared his admiration for him, along with other perpetrators of mass casualty events. (Doc. 79-1 at 4–10). Further writings in the journal indicated his desire to commit a mass casualty event at local hot springs and high schools in Montana. (Doc. 79-1 at 11–21; Doc. 79-2 at 1–2). Investigators found several glass bottles with wicks and partially filled with kerosene, commonly referred to as "Molotov cocktails," along with multiple empty bottles and wicks that could be used to make additional Molotov cocktails. (Doc. 68-1 at 2).

Lewis was charged with homicide by the State of Montana, but the case was dismissed. (Doc. 77 at 5). Lewis is currently charged with (1) Possession of Unregistered Destructive Devices under 26 U.S.C. § 5861(d); (2) Attempted Malicious Use of Fires and Explosives under 18 U.S.C. § 844(i); and (3) Carrying Explosives During the Commission of a Felony under 18 U.S.C. § 844(h)(2).

## II. Legal Standard

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in particular areas." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Motions in limine are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). "A ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *Id.* A court may "change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." *Id.*

## III. Discussion

Lewis argues that the Court should bar the Government from introducing evidence related to the alleged homicide and any of the writings discovered in his home, including the journal entries or symbols painted on the walls. (Doc. 77 at 2). In response, the Government contends that evidence related to John Doe is inextricably intertwined with the crimes Lewis is charged with because it would be

impossible to tell a "coherent and comprehensible" story at trial without discussing the initial investigation into the homicide. (Doc. 78 at 7). Furthermore, the journals and writings of Lewis are admissible either as evidence that directly bears on the elements of the crimes for which he is charged or as evidence of his intent or motive under Rule 404(b). (*Id.* at 5).

The Court will first address whether John Doe's homicide investigation is admissible as "inextricably intertwined" evidence and, if not, whether the evidence is admissible under Rule 404(b). The Court will then determine whether the journal entries and other wall writings are admissible as "other acts" evidence under Rule 404(b).

### A.   *John Doe Homicide*

Lewis argues that the Government is utilizing the alleged homicide to "dirty the case." He contends that because the alleged homicide is an entirely different crime lacking any common elements with the charges he is currently facing, it cannot be characterized as "inextricably intertwined." (Doc. 77 at 6). Lewis further argues that law enforcement can simply testify that they seized the alleged destructive devices due to an investigation into generic criminal conduct without the need to explain they were investigating a homicide. (*Id.*) In response, the Government claims that evidence related to the alleged homicide is necessary to give the relevant context to how the investigation into Lewis began. The Government contends that

it must explain why law enforcement came to and searched Lewis's home in the first place. (Doc. 78 at 7).

There are generally two categories of admissible "other act" evidence that is considered inextricably intertwined with the charges a defendant is facing and, therefore, does not need to meet the Rule 404(b) requirements. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). The first category is when the "other act" constitutes a part of the transactions that serve as the basis of the criminal charges, and the second is when it is necessary to permit the prosecutor to offer a "coherent and comprehensible" narrative about the commission of the crime. *Id.* Courts look to both temporal proximity and substantive similarity when determining whether evidence is inextricably intertwined. *See United States v. Rrapi*, 175 F.3d 742, 750 (9th Cir. 1999) (evidence related to prior uncharged burglaries was "inextricably intertwined" with charged crimes where the uncharged burglaries occurred while the defendants were under government surveillance and involved a similar pattern of criminal conduct); *see United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002) (evidence regarding a drug mule's prior drug run was necessary to explain why the mule was entrusted with more than $1 million worth of drugs).

In determining whether evidence is necessary for the prosecution to offer a "coherent and comprehensible" story, courts ask whether the evidence bears directly

on the charged crime. *United States v. Wells*, 879 F.3d 900, 928–29 (9th Cir. 2018). There must be either a sufficient contextual or substantive connection between the "other act" evidence and the alleged crime to justify bypassing the requirements of Rule 404(b). *Id.* at 929. "It is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *Vizcarra-Martinez*, 66 F.3d at 1013.

Here, the Government has failed to show how the alleged murder of John Doe "bears directly on the charged crime." The essential criminal elements that the prosecution must prove is that Lewis possessed destructive devices with the intent to use them to destroy real or personal property and took substantive steps in furtherance of this purpose. The fact that the police found a deceased individual in Lewis's trailer home does not make it any more likely that Lewis possessed or planned to use the destructive devices. Further, it is unnecessary to discuss the discovery of the deceased John Doe to provide a "coherent and comprehensible story." As Lewis has suggested, the relevant witnesses can state they were investigating reports of criminal activity when they discovered the destructive devices and Lewis's plans to use them.

Because this Court has concluded that the alleged murder of John Doe is not "inextricably intertwined" with crimes Lewis is charged with, the Court will apply

the Ninth Circuit's four-part 404(b) test to determine whether the evidence should be excluded. The Government argues that the evidence is admissible under Rule 404 as evidence of Lewis's intent because John Doe's murder was part of Lewis's "to-do" list before committing the mass casualty event at Chico Hot Springs. (Doc. 78 at 8-–9). Lewis simply argues that the murder does not pass the four-part 404(b) test. (Doc. 77 at 7).

Under Rule 404(b) evidence of prior criminal conduct may be admitted if: (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) in cases where knowledge and intent are at issue, as is the case here, the act is similar to the offense charged. *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994). In applying this test, the Ninth Circuit has emphasized that "extrinsic act evidence 'is not looked upon with favor' because guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing." *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir. 1993) (quoting *United States v. Hodges*, 770 F.2d 1475 (9th Cir. 1985). "In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403 balancing test – its probative value must not be substantially outweighed by the danger of unfair prejudice." *United States v. Montgomery*, 150 F.3d 983, 1000 (9th Cir. 1998).

Here, under the Rule 404(b) factors, the alleged homicide of John Doe is inadmissible. The act does not tend to prove a material point in the prosecution of Lewis. Lewis is charged with the possession and attempted use of destructive devices, specifically Molotov cocktails. Lewis allegedly murdering John Doe with a gun does not make it any more or less likely that he committed the crimes he is accused of. Further, given the State of Montana's decision to dismiss the homicide charges against Lewis (*See* Doc. 77 at 7), this Court cannot reasonably conclude that there is sufficient evidence to support a finding that Lewis committed the act. Last, there is little similarity between the crimes charged and the "other act." While both acts are violent and criminal, the similarities end there. A plan to utilize destructive devices in a public area is far different in scale and scope from the killing of one individual using a gun. Because the majority of the 404(b) factors weigh in favor of excluding the evidence, the Court finds that the alleged murder of John Doe is inadmissible as "other act" evidence.

> B.  *Journal Entries and Painted Symbols*

When investigating Lewis's trailer home, officers observed racially motivated writings and symbols on the walls of the trailer, including a Confederate flag, Odin Runes, swastikas and other Nazi symbols, various white supremacist slogans, and racial slurs. Officers found journal entries spanning a two-year period, which contained his plans for a mass casualty event at either Chico Hot Springs or high

schools in Montana, his admiration for various school shooters, his desire to kill his ex-girlfriend and mother, and racist rhetoric.

The Government intends to present the journal entries and spray-painted symbols from Lewis's home during its case-in-chief as evidence of Lewis's plan, motive, and intent to commit the crimes with which he is charged under Rule 404(b). (Doc. 78 at 3). The Government argues that the journal entries and symbols on the trailer wall are admissible under Rule 404(b) because they demonstrate Lewis's intent and motive to commit a mass casualty event. (Doc. 78 at 9). Again, Lewis argues that the spray-painted symbols and journal entries fail the four-part Rule 404(b) test. (Doc. 77 at 9).

"Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002) (citing Fed. R. Evid. 404(a)). "However, Rule 404(b) permits evidence of prior wrongs or acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) in cases where knowledge and intent are at issue, as is the case here, the act is similar to the offense charged. *Mayans*, 17 F.3d at 1181. "In addition

to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403 balancing test – its probative value must not be substantially outweighed by the danger of unfair prejudice." *Montgomery*, 150 F.3d at 1000.

Given the variety of subject matter covered in Lewis's journals and painted on the wall and the Government's intention to present all of the journal entries, the Court thinks it is appropriate to divide the journal entries and writings on the wall into five categories and evaluate the admissibility of each separate category. These categories are: (1) writings that describe Lewis's desire to commit a mass casualty event at Chico Hot Springs utilizing Molotov cocktails (Doc. 79-1 at 19–20), (2) writings that describe Lewis's desire to commit a mass shooting at his former high schools and Chico Hot Springs, drawings of the outfit he planned on wearing during the shootings, and his admiration of school shooters (Doc. 79-1 at 3–18; Doc. 79-2 at 1–2), (3) writings that describe Lewis's desire to kill his ex-girlfriend and his mother (Doc. 79-1 at 32, 35–36, 42, 44–48, 68, 72–75); (4) writings that discuss Lewis's hatred of minority groups, his admiration of Hitler and other historical Nazi party figures, and painted white supremacist symbols and slogans on his trailer wall (Doc. 79-1 at 21–31, 33–44, 49, 55–67); and (5) writings that describe how Lewis wants to raise his son (Doc. 79-1 at 50–54). There is some overlap between these entries, as some of Lewis's writings that discuss his hatred of minorities and admiration of Hitler also discuss his desire to kill his ex-girlfriend.

The first category of writings is admissible as direct evidence of the crimes for which Lewis is charged. Rule 404(b) applies solely to evidence of "other acts," not to evidence of the very acts a defendant is charged with in the indictment. *United States v. Loftis*, 843 F.3d 1173, 1176 (9th Cir. 2016). "One of the key words in determining the scope of Rule 404(b) is 'other'; only crimes, wrongs, or acts 'other' than those at issue under the pleadings are made inadmissible under the general rule." *Id.* (quoting 22B Kenneth W. Graham Jr., *Federal Practice and Procedure* § 5239 (1st ed. 2016). The principle applies to any prosecution in which the "other crime is, in fact, "an element of the crime charged." *Id.* (citations omitted).

Under Count 2 of the superseding indictment, Lewis is charged with attempted malicious use of fire and explosives in violation of 18 U.S.C. § 844(i). To be found guilty of this charge, the Government must prove that Lewis "intended to maliciously damage or destroy a building, vehicle, or other real or personal property." Journal entries that detail his plan to use Molotov cocktails at a hot spring in Montana are direct evidence of his intent and, therefore, should be considered direct evidence of the crime charged rather than "other act" evidence. Therefore, any writings that describe his plan to use Molotov cocktails at Chico Hot Springs in Montana are admissible.

The second category of writings that describes his intention and desire to commit a mass shooting is admissible as "other acts" evidence demonstrating his

11

intent or motive. Lewis has multiple journal entries that describe his admiration of school shooters, and he often addresses his entries to Nikolas Cruz, the Parkland High School shooter. The writings describe his desire to commit a mass shooting and his regret for not committing a mass shooting earlier at his former high schools in Montana. These journal entries are relevant for establishing Lewis's motive and intent to maliciously damage or destroy property.

Further, these entries pass the four-part Ninth Circuit test for 404(b) evidence. First, the entries are relevant to prove a material point because they demonstrate that Lewis had plans to commit a mass casualty event. For Count II, the Government must prove that Lewis intended to use the Molotov cocktails to destroy real or personal property. These journal entries demonstrate Lewis's intent to use lethal weapons to carry out a mass killing that would destroy real and personal property. Second, the act is not too remote in time, as many of the entries occurred within months of the discovery of the Molotov cocktails in Lewis's home. Third, there is sufficient evidence to find that the defendant made the entries, given that officers found the journal in his trailer home, where he lived alone. Last, the journal entries show his intent and motivation to use weapons to commit a serious crime, which he is accused of. Therefore, Lewis's journal entries that describe his admiration of school shooters and desire to commit a similar act are admissible under Rule 404(b) to show his intent.

The journal entries also pass the Rule 403 balancing test. Demonstrating Lewis's intent to commit mass murder through his own words is extremely probative to the disposition of the case. Although Lewis's violent rhetoric is certainly prejudicial, it does not substantially outweigh the highly probative value of these journal entries.

The third category of writings that describe Lewis's desire to kill his ex-girlfriend and mother is inadmissible under Rule 404(b). The only purpose of introducing this evidence is to show Lewis's predisposition to violence and that he acted in conformity with this predisposition when planning his attack. Because the Court cannot discern any purpose for the evidence other than to show Lewis acted in conformity with his violent nature, the evidence is inadmissible.

Likewise, the fourth category of writings that discuss Lewis's racist beliefs and praises Hitler, along with the painted white supremacist symbols and slogans on his trailer home, are inadmissible. The Court cannot discern any purpose for this evidence other than painting Lewis as a "bad person" based on his racist beliefs.

Last, the fifth category of writings that discusses how Lewis wants to raise his future son is inadmissible. These writings have no connection to Lewis's intent or motive in relation to the crimes he is charged with.

## IV. Conclusion

IT IS HEREBY ORDERED that Defendant Kadin Hawkeye Lewis's Motion in Limine (Doc. 76) is GRANTED in-part and DENIED in-part.

1. Lewis's motion to bar evidence of John Doe's alleged homicide is GRANTED.
2. Lewis's motion to bar evidence of his journal entries is GRANTED as to Doc. 79-1 at 21–75.
3. Lewis's motion to bar evidence of the symbols and writings found on the walls of his home is GRANTED.
4. Lewis's motion to bar evidence of his journal entries is DENIED as to Doc. 79-1 at 1–20 and Doc. 79-2 at 1–2.

DATED this 24th day of June, 2025.

*/s/ Susan P. Watters*
SUSAN P. WATTERS
United States District Judge