STEVEN C. BABCOCK
GILLIAN E. GOSCH
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
175 North 27th Street, Suite 401
Billings, MT 59101
Phone: (406) 259-2459
Fax: (406) 259-2569
steven_babcock@fd.org
gillian_gosch@fd.org
        Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **Case No. CR-23-143-BLG-SPW** |
| Plaintiff, | |
| vs. | **DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE** |
| KADIN HAWKEYE LEWIS, | |
| Defendant | |

COMES NOW Defendant, KADIN HAWKEYE LEWIS, by and through his attorneys of record, Steven C. Babcock and Gillian E. Gosch, and the Federal Defenders of Montana, and hereby files this brief in support of the Motion to Suppress. Mr. Lewis asserts that the search warrants or execution of the search warrants were in violation of the Fourth Amendment of the United States

Constitution.  All evidence obtained in violation of the Fourth Amendment should be suppressed.

**Factual Background**

On September 19, 2022, at 12:20 p.m. Detective Green of the Park County Sheriff's Office applied for a search warrant of a white Road Ranger Extreme travel trailer.  The application states as follows:

In Re the Search of a White Road Ranger Extreme travel trailer with VIN# 1KT252T2922296258, on junkyard property owned by Chad Standish on the west side of East River Road, across the highway from his residence at 1350 East River Road in Pray, SW 2022-67 Application for Search Warrant (Sept 19, 2022) (Search Warrant 1) (attached as Exhibit A).

Under penalty of perjury Detective Green stated that the crime of deliberate homicide has been committed.  He stated that "the evidence, contraband, or person connected with the aforementioned crime(s) include:

DNA, blood, firearms, ammunition, firearms accessories, shell casings, clothing, human tissue, gunshot residue, photographs, hair, edged weapons, bullets, cell phones, electronics, computers, recording devices, cameras, dangerous weapons, fingerprints, personal papers and effects.

The entirety of the facts establishing probable cause are as follows:

On Monday September 19, 2022, at approximately 0822 hours, property owner Chad Standish called Park County Dispatch to the report the discovery of a dead body in a travel trailer on his property that he thought was beaten up. Upon my arrival at approximately 0915 hours, I located a white male deceased in a white Road ranger Extreme travel trailer. Initial investigation indicated the death of the male subject may have been the result of foul play.

Detective Green then continues on about his training as a law enforcement officer. From his training and experience Detective Green knows "DNA can be left as evidence at a crime scene in many forms, including in tissue, hair, blood, saliva, urine, sweat, mucus, ear wax, semen, and from vaginal or rectal cells." Id.

A subsequent and almost identical search warrant was filed later the same day (Sept 19, 2022) for the trailer itself. This is identified as Search Warrant 2. Exhibit B. The only change to this warrant application is that the evidence connected includes the trailer itself. The evidence seized from the search warrants as follows:

Search Warrant 1

1. School shooting manifesto, from the bedroom

2. .22 cal revolver model 920, from the bedroom

3. Fired .22 casing, from the bedroom

4. Glock magazine, from the bedroom

5. .22 cal ammo, from the bedroom

6. Plastic water bottle, from the bedroom

7. Written documents, from the bedroom

8. Journal, from the bedroom

9. Diary red, from the bedroom sink

10. 14 fired .22 cal, from the table

11. Purple head band, from the table

12. .22 cal fired rounds, from the couch

13. Suspected bullet, from the kitchen

14. Suspected bullet, from the kitchen

15. Bullet, from the kitchen

16. Blow swab, in the kitchen

17. Floor of the kitchen

18. Blood swab, from the kitchen

19. Blood swab, from the kitchen

20. Blood swab, from the kitchen

Search Warrant 2

The travel trailer itself.

These items are listed in the evidence recovery log which was included

with the keeper's receipt.  In addition to these items the deceased body was taken, and hundreds of photographs were taken in the trailer, and a subsequent search of the trailer was done in February of 2023.

**Argument**

**I.     The search warrants lack probable cause and were not tailored to any specific facts, the search of the trailer was invalid, all evidence found should be suppressed.**

Search Warrant 1 and Search Warrant 2 were not supported by carefully delineated probable cause and were not tailored to any specific facts, therefore all evidence should be suppressed.  The Fourth Amendment states that "no Warrants will issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons to be seized."  U.S. Const. Amend IV.  Four requirements must be met for a warrant to be valid:

1. The warrant shall be supported by probable cause;

2. The probable cause shall be established through sworn testimony;

3. The warrant shall particularly describe the place to be searched; and

4. The warrant shall particularly describe the persons or items to be seized.

*Groh v. Ramirez*, 540 U.S. 551, 557 (2004).

The first two requirements apply to the application for the warrant, while the third and fourth requirements apply to the text of the warrant itself.  The Supreme Court has held that the "long-prevailing standards" or probable cause "seek to

safeguard citizens from rash and unreasonable inferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in community's protection. *Brinegar v. United States*, 388 U.S. 160, 176 (1948). "Requiring more would unduly hamper law enforcement. To allow less would be to leaving law-abiding citizens at the mercy of the officers' whim or caprice. *Id.* "The right of officers to thrust themselves into a home . . . is of grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance." *Johnson v. United States*, 333 U.S. 10, 14 (1948).

The Supreme Court has stated the following in determining whether probable cause exists in the application for a search warrant:

> [t]he task of the issuing magistrate is simply to make a practical, common sense determination whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

The Supreme Court further held in *Gates* that "sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id*. at 239.

The two search warrant applications failed to establish probable cause that evidence of the suspected crime will be found in the area requested to be searched. The warrant application must do more than merely establish probable cause to

believe an offense has been committed, it must also demonstrate a likelihood that specific evidence will be found in a specific place. *Id*.

The facts that have been provided are 1) a person is deceased, 2) that person was beaten up, 3) Chad Standish called dispatch at 8:22 a.m., 4) the officer arrived at 9:22 a.m.; and 5) there was an initial investigation and there "may" be foul play. No other facts to support that a crime has been committed have been provided. These statements do not provide probable cause. Statements such as a person being "beaten up" and that there "may" be foul play are speculative and conclusionary.

## II.  The search warrants do not describe the items to be seized with sufficient particularity.

Even more essential to this analysis is that the warrant is silent on the link between the possible crime and any evidence that could be located in a particular place. The warrant applications fail to satisfy the minimum requirement of the requisite probable cause finding that certain evidence of potential "foul play" would be found. This is a fishing expedition that is prohibited by the Fourth Amendment.

The warrant applications should not be saved by Detective Green's experience and training. The search warrants failed to detail how the training and experience related to the bare factual inferences claimed in the affidavit. Within the four corners of the affidavit the warrant applications fail to establish the minimum of probable cause that a specific crime has been committed, and certain evidence would be found in a specific location.

A search warrant must describe two things with particularity: "the place to be searched' and 'the persons of things to be seized." *United States v. Grubbs*, 547 U.S. 90, 97 (2006). "The requirement of particularity serves to prevent a 'general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). The purpose is not limited to the prevention of general searches. *Groh v. Ramirez*, 540 U.S. 551, 561 (2004). "A particular warrant also 'assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Id*. (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977). This means that the presumptive rule against warrantless searches applies to searches whose only defect is a lack of particularity in the warrant. *Id*.

This is even more important when a warrant seeks to seize otherwise lawful objects. Courts have allowed more latitude in connection with searches for contraband like weapons or narcotics. However, it is different when law enforcement seizes "innocuous" objects. *Andreson v. Maryland*, 427 U.S. 463, 482 (1976). Those searches call for special care to assure that the search is conducted in a manner that minimizes unwarranted instructions upon privacy. *Id.*

The Ninth Circuit has been critical of law enforcement's generality as an alternative to conducting a more thorough investigation before seeking a warrant. *United States v. Spilotro*, 800 F.2d 959, 963-64. The specificity required in a warrant

8

varies depending on the circumstances of the case and the type of items involved. Warrants which describe general categories of items are not necessarily invalid if a more precise descriptions of the items subject to seizure is not possible. The warrant in this case is as general as it gets. Detective Green was in the trailer there is no reason why the warrant application and then the warrant itself lacked all specificity.

Catchall provisions are patently inappropriate. The Supreme Court has noted "that a search warrant for 'evidence of a crime' is "so open ended' in its description that it could 'only be described as a general warrant." *Groh v. Ramirez*, 540 U.S. 551, 553 (2004).

The trailer had multiple rooms. The warrant failed to identify where the search would take place. The warrant lacks specificity. There is not even a description of where the deceased is located. The items searched and seized related to numerous crimes – despite the only fact contained in the application is that Chad Standish, owner of the property, thought that the deceased was "beaten up." Detective Green stated that the death of the male subject "may have been the result of foul play."

## III.    The search warrants are facially overbroad

Given the facts at the time when the warrant application was submitted, and the warrant was issued there is no reason why the warrants were so nonspecific. Essentially, what was granted in this warrant was catchall – search whatever and

wherever you want. Particularity and overbreadth are two distinct parts of the evaluation of a warrant for Fourth Amendment purposes. *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of the circumstances. *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007). The search and seizure of large quantities of material is justified if the material is within the scope of the probable cause underlying the warrant. *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986). The warrant in this case was drastically overbroad, allowing the search of the entire trailer without any limiting language.

The search warrants fail to meet the requirements of the test set out in *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986), for determining whether a warrant is "sufficiently precise." As in *Spilotro*, the search warrant authorized seizures of entire categories of items not generally evidence of criminal activity and provided no guidelines to distinguish items used lawfully from those the government had probable cause to seize. *Id*. This was a warrant for an alleged deliberate homicide. At the very least, the seizure without any probable cause for the journal entries was overbroad.

10

## IV.   The good faith exception should not be used to rescue the invalid warrants.

Even if a warrant is unsupported by probable cause, suppression of the evidence found in a search pursuant to that warrant is not justified if the officers' reliance on the judge's determination of probable cause was objectively reasonable.  *United States v. Needham*, 718 F.3d 1190, 1194 (9th Cir. 2013).  The United States, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable.  *United States v. Corral-Corral*, 899 F.2d 927 (10 Cir. 1990).

For the good faith reliance exception to apply, the affidavit must establish "at least a colorable argument" for probable cause, and the officers must have relied on the search warrant in an objectively reasonable manner.  *United States v. Krupa*, 658 F.3d 1174, 1179 (9th Cir. 2011).  The inquiry is not what the executing officer believed, or could have believed, but "whether a reasonably well-trained officer would have known that the search was illegal despite the judge authorization." *United States v. Luong*, 470 F.3d 898 (9th Cir. 2006).

Exceptions may be found, including where the judge issuing the warrant, was misled by false information in the affidavit, where the judge wholly abandons her judicial role, where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and where the warrant is so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be

11

valid.  *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013).  If any of these four situations apply, the Court "need not inquire further" and can conclude that the good faith exception to the exclusionary rule does not apply.  *Id*.

As stated above, the government bears the burden.  At the very least the search and seizure of the journal entries is facially overbroad.  The good faith exception cannot be used to rescue a search warrant that is facially overbroad, such as the warrants at issue here.  *United States v. Spilotro*, 800 F.2d 959, 968 (9th Cir. 1986).

## V.     *State of Montana v. Kadin Lewis*, Cause No. DC-34-2022-107, Montana Sixth Judicial District Court, Park County.

Mr. Lewis was charged with deliberate homicide in the State of Montana.  The above issues were litigated.  Although quite similar, the analysis is somewhat different due to Montana's Constitutional Right of Individual Privacy, which provides citizens with broader protection from the government.  The State of Montana conceded that the warrants were overbroad.  The State of Montana stated the following in response to Mr. Lewis' Motion to Suppress:

> In this case, the State acknowledges that some of the items requested by Detective Green fall into this category of overbreadth.  While the State maintains that there were valid reasons to search and obtain the handwritten journal entries, Detective Green did not provide any basis within the four corners of the warrant to prevent an indiscriminate search of such items.  As the State is bound by the probable cause in the warrant affidavit, the State must concede that the written items should be suppressed by this Court.  See Exhibit C.  State's Response to Defendant's Motion to Suppress, pg. 7.

Obviously, the State's concession is not binding on the government nor this

Court.  However, at the very least, the search and seizure of the journal entries should be deemed facially overbroad and should be suppressed.

**CONCLUSION**

For the reasons stated above all the evidence seized pursuant to the invalid warrants should be suppressed pursuant to the Fourth Amendment.  In the alternative, this Court this should sever the overbroad search and seizure of the journal entries and apply the exclusionary rule.

RESPECTFULLY SUBMITTED this 30th day of June, 2025.

/s/ Steven C. Babcock
STEVEN C. BABCOCK
Federal Defenders of Montana
    Counsel for Defendant

/s/ Gillian E. Gosch
GILLIAN E. GOSCH
Federal Defenders of Montana
    Counsel for Defendant

# CERTIFICATE OF SERVICE
## L.R.5.2(b)

I hereby certify that on June 30, 2025, a copy of the foregoing document was served on the following persons by the following means:

<u>1, 2</u>   CM-EDF
\_\_\_   Hand Delivery
<u> 3 </u>   Mail
\_\_\_   Overnight Delivery Service
\_\_\_   Fax
\_\_\_   E-Mail

1.    CLERK, UNITED STATES DISTRICT COURT

2.    JEFFREY K. STARNES
    Assistant United States Attorney
    United States Attorney's Office
    119 First Ave. North, #300
    Great Falls, MT  59401
        Counsel for the United States of America

3.    KADIN HAWKEYE LEWIS
        Defendant

/s/ Steven C. Babcock
STEVEN C. BABCOCK
Federal Defenders of Montana
Counsel for Defendant

/s/ Gillian E. Gosch
GILLIAN E. GOSCH
Federal Defenders of Montana
        Counsel for Defendant

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief is in compliance with Local Rule 12.1(e). The Brief's line spacing is double spaced. The brief is proportionately spaced, the body of the argument has a Times New Roman typeface, 14-point size and contains 2,684 words, excluding tables and certificates.

DATED this 30th day of June, 2025.

/s/ Steven C. Babcock
STEVEN C. BABCOCK
Federal Defenders of Montana
     Counsel for Defendant

/s/ Gillian E. Gosch
GILLIAN E. GOSCH
Federal Defenders of Montana
     Counsel for Defendant