# DEFENDANT'S EXHIBIT C
# Park County District Court
# Case No. 34-2022-107 – State's Response Brief

**United States v. Kadin Hawkeye Lewis**
**CR-23-143-BLG-SPW**

FILED
03/01/2024
Molly Bradberry
CLERK
Park County District Court
STATE OF MONTANA
By: Pamela Reisenauer
DC-34-2022-0000107-IN
Bidegaray, Kathy
133.00

MICHAEL J. GEE
SELENE KOEPKE
Assistant Attorneys General
Special Deputy Park County Attorneys
P.O. Box 201401
Helena, MT 59620-1401
Telephone: (406) 444-2026
michael.gee@mt.gov
selene.koepke@mt.gov

KENDRA K. LASSITER
Park County Attorney
414 East Callender Street
Livingston, MT 59047
Telephone: (406) 222-4150
countyattorney@parkcounty.org

COUNSEL FOR THE STATE

MONTANA SIXTH JUDICIAL DISTRICT COURT
PARK COUNTY

| | |
|---|---|
| STATE OF MONTANA,<br>Plaintiff,<br>v.<br><br>KADIN LEWIS,<br>Defendant. | Cause No. DC-34-2022-107<br><br>*The Honorable Katherine Bidegaray*<br><br>**STATE'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE: UNLAWFUL SEARCH WARRANT** |

Michael J. Gee and Selene M. Koepke, Assistant Attorneys General and Special Deputy Park County Attorneys, file this response in opposition to Defendant's *Motion to Suppress Evidence: Unlawful Search Warrant.* While the State acknowledges some of the items seized are outside of the scope of the warrant, Federal and State case law provide multiple avenues for this Court to deny the bulk of Defendant's motion.

//



## FACTUAL BACKGROUND

The State is bound by the information contained in the search warrant and concurs with the Defendant's recitation of the facts.

## ANALYSIS

### I. Adequate probable cause exists for the search of the travel trailer.

Montana Code Annotated § 46-5-221 provides statutory authority for when a judge shall grant a search warrant.

> A judge shall issue a search warrant to a person upon application, in writing, by telephone, or electronically, made under oath or affirmation, that:
>
> (1) states facts sufficient to support probable cause to believe that an offense has been committed;
>
> (2) states facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found;
>
> (3) particularly describes the place, object, or persons to be searched; and
>
> (4) particularly describes who or what is to be seized.
>
> Mont. Code Ann. § 46-5-221.

"Probable cause exists when the facts and circumstances presented would warrant an honest belief in the mind of a reasonable and prudent man that the offense has been, or is being, committed and that the property sought exists at the place designated." *State v. Kuneff*, 1998 MT 287, ¶ 22, 291 Mont. 474, 970 P.2d 556 (quoting *State v. Isom*, 196 Mont. 330, 343, 641 P.2d 417, 424 (1982)) (internal quotation marks omitted).

The facts and circumstances contained within the four corners of the affidavit supporting the application for a search warrant should justify a

reasonable belief that an offense has been committed and that the items sought are at the place designated in the warrant. *Isom*, 196 Mont. at 343. A search will be upheld where "the nexus between the items to be seized and the place to be searched rested not on direct observation . . . but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property." *State v. Pease,* 222 Mont. 455, 465, 742 P.2d 153 (1986) (citing *United States v. Spearman*, 532 F.2d 132, 133 (9th Cir. 1976).

Courts use the "totality of the circumstances" test initially set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). When reviewing a probable cause challenge to a search warrant, the analysis centers around whether the initial court had a "substantial basis" for concluding probable cause to issue the warrant existed. *State v. Oleson*, 1998 MT 130, ¶ 7, 289 Mont. 139, 959 P.2d 503, *overruled in part by State v. Kuneff*, 1998 MT 287, 291 Mont. 474, 970 P.2d 556 (quoting *State v. Jensen*, 217 Mont. 272, 276, 704 P.2d 45 (1985)). The duty of this court is simply to ensure that the previous judge had a substantial basis for concluding that probable cause to issue the search warrant existed. *State v. Crowder*, 248 Mont. 169, 173, 810 P.2d 299 (1991). This function does not constitute a de novo review of the magistrate's determination. *State v. Baldwin,* 242 Mont. 176, 183, 789 P.2d 1215 (1990). The reviewing court should give great deference to the determination that probable cause exists and should draw all reasonable inferences possible to support the issuing court's determination. *Oleson*, ¶ 8 (citing *State v. Rinehart*, 262 Mont 204, 210-211, 864 P.2d 1219 (1993)).

The United States Supreme Court has recognized that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted

under common law pleadings have no proper place in this area." *United States v. Ventresca*, 380 U.S. 102, 108 185 S. Ct. 741 (1965). The Supreme Court has further realized that many warrants are issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings. It follows then, that "courts should not invalidate [warrants] by interpreting [affidavits] in a hypertechnical, rather than a commonsense, manner." *Id.*, at 109. The Supreme Court has held that in doubtful or marginal cases, reviewing courts should resolve the issue with the preference for warrants in mind. *State v. O'Neill*, 208 Mont. 386, 394, 679 P.2d 760 (1984).

**A. The search warrant states facts sufficient to support probable cause to believe that an offense has been committed.**

Probable cause must be determined exclusively from the four corners of the search warrant application and is based on a determination of whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Probable cause requires a determination that there is a probability of criminal activity. *State v. Worrall*, 2001 MT 57, ¶ 9, 304 Mont. 341, 22 P.3d 182. In determining if probable cause exists, the court should look at whether the facts and circumstances presented would warrant an honest belief in the mind of a reasonable and prudent man that the offense has been, or is being, committed and that the property sought exists at the place designated. *Kuneff*, ¶ 22 (citing *Isom*, 196 Mont. at 343). A determination of probable cause does not require facts sufficient to make a prima facie showing of criminal activity. Rather, the issuing magistrate must only determine that there is a probability of criminal activity. *Rinehart*, 262 Mont. at 210.

Here, Detective Green elicited facts in the search warrant that a dead body was present in a travel trailer on another's property. Although it appears that at the time of the application cause of death was unknown, the statements regarding the body being "beaten up" and was a result of "foul play" is indicative of criminal activity given that the definition of "foul play" as provided by Merriam-Webster is "violence, especially murder." Merriam-Webster Dictionary, "foul play," (available at https://www.merriam-webster.com/dictionary/foul%20play). Although by no means a prima facie showing, the language contained in the search warrant does indicate a probability of criminal activity. This Court should determine that probable cause of the crime of homicide exists.

**B. The search warrant states facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found and specifically identifies the trailer as the place to search.**

Statute provides that a search warrant must contain "facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found." Mont. Code Ann. § 46-5-221(2). As stated above, a search will be upheld where "the nexus between the items to be seized and the place to be searched rested not on direct observation . . . but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property." *Pease,* 222 Mont. at 465, (citing *United States v. Spearman,* 532 F.2d 132, 133 (9th Cir. 1976)).

Again, although the information is limited, contained in the four corners of the document is a description of a dead body within a clearly identified travel trailer in the caption of the warrant. A commonsense inference given the dead body in a small, enclosed travel trailer would be that evidence of the crime would be located within the trailer. This Court should

also uphold the warrant as there was probable cause to search within the trailer.

**C. The search warrant particularly describes who or what is to be seized.**

With respect to the items that are the subject of the search, the warrant description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized, preventing general exploratory searches and indiscriminate rummaging through a person's belongings. *State v. Bar-Jonah,* 2004 MT 344 ¶ 64, 324 Mont. 278, 102 P.3d 1229. Montana has held that "the command to search can never include more than is covered by the showing of probable cause to search." *State v. Graham*, 2004 MT 385, ¶ 17, 325 Mont. 110, 103 P.3d 1073. The United States Supreme Court has held that "the scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.'" *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S. Ct. 1013, 1016, 94 L. Ed. 2d 72 (1987) (quoting *United States v. Ross*, 456 U.S. 798, 824, 102 S. Ct. 2157, 2172, 72 L. Ed. 2d 572 (1982)). A search warrant must limit the scope of a search to the specific areas and things for which there is probable cause to search. *State v. Neiss,* 2019 MT 125, ¶ 57, 396 Mont. 1, 443 P.3d 435. By so doing, "the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Garrison*, 480 U.S. at 84; *see State v. Quigg*, 155 Mont. 119, 132, 467 P.2d 692, 699 (1970). In *Quigg*, the Montana Supreme Court adopted the commonsense principle that there must be a nexus between the item to be seized and criminal behavior. *Id.*

Essential to both the Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution and § 46-

5-221, is the particularity requirement - a search warrant must particularly describe which items are to be seized. "The level of specificity varies depending on the circumstances of the case and the type of items involved." *State v. Seader*, 1999 MT 290, ¶ 13, 297 Mont. 60, 990 P.2d 180. "Generic categories or general descriptions of items are not necessarily invalid if a more precise description of the items to be seized is not possible." *State v. Chilinski*, 2014 MT 206, ¶ 22, 376 Mont. 122, 330 P.3d 1169 (quoting *Seader*, ¶ 13).

When reviewing the specificity requirement of a search warrant, this Court should consider two aspects: particularity and breadth. *Neiss*, ¶ 57. Particularity is the requirement that the warrant must clearly state what is sought. *Id.* Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based. *Id. See also* 2 Wayne R. LaFave, *Search and Seizure* § 4.6(a), 767 (5th ed. 2012) ("[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based.").

In this case, the State acknowledges that some of the items requested by Detective Brian Green fall into this category of overbreadth. While the State maintains that there were valid reasons to search and obtain the handwritten journal entries, Detective Green did not provide any basis within the four corners of the warrant to prevent an indiscriminate search of such items. As the State is bound by the probable cause in the warrant affidavit, the State must concede that the written items should be suppressed by this Court.

However, contrary to Defendant's assertions, the remaining items were legally identified and seized based on the circumstances of the search. The information contained in the affidavit was indicative of "foul play", as

asserted by Detective Green. Detective Green seized a .22 caliber revolver, related ammunition, fired casings and fired bullets from the trailer. A death caused by a firearm meets the definition of "foul play," and those items were later connected to the homicide of Casey Anderson and the involvement of the Defendant. Evidence such as a firearm, tied to someone's death, is reasonably related to the criminal offense listed in the warrant and Detective Green had probable cause to obtain.

Defense further contends that the search of the camper should have been limited to the area directly around the body. Montana case law does not support that premise. "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *Doe v. State*, 256 Mont. 348*,* 350-351, 846 P.2d 1018 (citing *Ross*, 456 U.S. at 820-21). Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. *Id.*

As argued above, the search warrant did provide a limited but sufficient basis to find instrumentalities of a homicide, to include firearms, ammunition, and related materials. Pursuant to *Doe*, because Detective Green had authority to search for weapons, he was entitled to search in the entirety of the sufficiently identified travel trailer.

## II. This Court should apply the Federal Good Faith exception to the Exclusionary rule.

Should this Court disagree with the State's argument above, the State can still prevail. In Montana, search warrants are favored in the investigation process. If a warrant was insufficient or otherwise suppressed, it follows that any evidence seized as a result of that warrant could be

suppressed under the "exclusionary rule" or the "fruit of the poisonous tree" doctrine. *State v. Hilgendorf,* 2009 MT 158, ¶ 23, 350 Mont. 412, 208 P.3d 401 (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S. Ct. 407, 416, 9 L. Ed. 2d 441 (1963)). Such rule applies to both the direct product of the illegal search and evidence that comes later, as an indirect, but connected search, up until the connection becomes attenuated. *Murray v. United States*, 487 U.S. 533, 536-537, 108 S. Ct. 2529 (1988). However, exceptions to the exclusionary rule apply. The United States Supreme Court has held that when an officer relies on a warrant issued by a detached and neutral magistrate, that officer may rely on the issuance of that warrant in good faith. Because a search warrant "provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime,'" *United States* v. *Chadwick*, 433 U.S. 1, 9 (1977) (quoting *Johnson* v. *United States*, 333 U.S. 10, 14 (1948)), the United States Supreme Court has expressed a strong preference for warrants and declared that "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *Ventresca*, 380 U.S. at 106. Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and the United States Supreme Court has concluded that the preference for warrants is "most appropriately effectuated" by allowing "great deference" to a magistrate's determination. *Spinelli* v. *United States*, 393 U.S. 410, 419, 89 S. Ct. 584 (1969).

Deference to the magistrate, however, is not boundless. It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based. *Franks* v. *Delaware,* 438 U.S. 154

(1978). Second, the courts must also insist that the magistrate purport to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *Aguilar* v. *Texas,* 378 U.S. 108, 111, 84 S. Ct. 1509 (1964).

The United States Supreme Court has specifically found that the exclusionary rule is designed to deter police misconduct, rather than to punish the errors of judges. *United States v. Leon*, 468 U.S. 897, 916, 104 S. Ct. 3405 (1984). As the Court discussed in *Michigan* v. *Tucker*, 417 U.S. 433, 447 (1974), and reiterated in *United States* v. *Peltier*, 422 U.S. 531, 539, 95 S. Ct. 2313 (1975):

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.

In *Leon,* the Supreme Court held that view is particularly true when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. *Leon*, 468 U.S. at 920. The Court discussed that it is "the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.* It follows that if the law enforcement officer obtains a warrant in the usual course, such officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. *Id.* "[Once] the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." *Id. (*citing *Stone v. Powell*, 428 U.S. 465, 498, 96 S. Ct. 3037

(1976) (Burger, C. J., concurring). The *Leon* Court rationalized that penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations. *Leon,* 468 U.S. at 920.

To the State's knowledge and research, the undersigned cannot find a case where this specific good faith exception to the exclusionary rule has been considered in Montana law. However, absent that specific consideration in light of Montana's separate and distinct constitutional provisions, this Court is bound by the United States Supreme Court precedent. Deference to the issuance of a warrant, as provided by the Montana Supreme Court in *O'Neill*, provides the basis for this extension. *See O'Neill*, 208 Mont. at 394. The State asks this court to conclude, as the *Leon* Court found that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." That conclusion does not foreclose exclusion in other cases, as "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Leon,* 468 U.S. at 923. Suppression would remain an appropriate remedy if the judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth under *Franks*. The exception, if adopted, would not apply in cases where the officer manifests objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923 (citing *Brown* v. *Illinois*, 422 U.S. 590, 610-611, 95 S. Ct. 2254 (1975) (Powell, J., concurring in part)). Finally, *Leon* recognized that "depending on the circumstances of the particular case, a warrant may be so facially deficient --

*i. e.*, in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid." *Id.*

In this case, Detective Green drafted a search warrant he believed was sufficient to show probable cause and provided it to the Honorable Brenda Gilbert for an independent review as governed by law. Upon obtaining the signed warrant from Judge Gilbert, Detective Green then could not be expected to question the judge's probable-cause determination or his judgment that the form of the warrant is technically sufficient. *See Leon*, 468 U.S. at 920. The State still concedes that probable cause to seize the writings was not present in the affidavit. However, given the facts presented in the search warrant, that a dead body was found in a small travel trailer with signs of foul play, it is not "entirely unreasonable" to believe that a crime occurred and there was probable cause to search for the instrumentalities of such a crime. Nothing alleged in Defendant's motion indicates that Detective Green provided false information in the affidavit that would warrant its suppression under *Franks,* and this warrant should survive scrutiny under the Federal Good Faith exception to the exclusionary rule.

**III. Regardless of any perceived deficiencies in the search warrant, Montana Code Annotated § 46-4-111 provides an independent basis for the search of the trailer and seizure of evidence.**

As discussed above, certain exceptions to the exclusionary rule apply. One such exception is if the evidence was, or inevitably would have been, acquired from an independent source, free from the prior illegality. *In re R.P.S.,* 191 Mont. 275, 279, 623 P.2d 964 (1981) (citing *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S. Ct. 182, 183, 64 L. Ed. 319, T.D. 2984, 17 Ohio L. Rep. 514 (1920)); *Murray,* 487 U.S. at 537-43; *Wong Sun,* 371 U.S. at 487-88. Independent source and inevitable discovery exceptions have been found to be closely related under Montana law. *State v.*

*Therriault,* 2000 MT 286, ¶ 60, 302 Mont. 189, 14 P.3d 444; *Murray*, 487 U.S. at 539.

Although Detective Green put limited information in his search warrant, the State believes the seizure of the body, and other evidence of the crime could have been obtained by an independent source – in this case, the statutorily prescribed investigation by the coroner. When evaluating an independent source, the dispositive question becomes, "whether the asserted independent source or inevitable discovery was sufficiently free of the taint of the prior illegality is not simply whether the subject evidence would not have been discovered 'but for' the prior illegality, but whether it subsequently came about, or would have, as a result of the officer's 'exploitation' of the fruit of the prior illegality to facilitate the subsequent discovery or acquisition of evidence or, alternatively, 'by means sufficiently distinguishable' therefrom." *Wong Sun*, 371 U.S. at 487-88 (emphasis added—internal citation omitted). This premise reconciles the idea that the State should not profit from illegal activity, but at the same time, prevents the State from being put in a worse position than it would have occupied if the alleged illegal activity had not occurred. *Murray*, 487 U.S. at 539-42.

In Montana, county coroners have distinct statutory duties that require them to conduct their own investigations into a death, sometimes separate and aside from criminal investigations. Such powers and responsibilities are delineated in Montana Code Annotated § 46-4-110 et. seq. Specifically, § 46-4-111(1), entitled "Coroner's authority to seize and preserve evidence" allows a coroner to "enter any room, dwelling, building, or other place in which the coroner has probable cause to believe that a dead human body or evidence of the circumstances of a death that requires investigation may be found." A coroner may enter without a search warrant unless entry is refused by someone. *Id*. Only if a warrant is required must the coroner "(a) state facts

sufficient to show probable cause that a human body or evidence of the circumstances of death is present in the place to be searched; (b) particularly describe the place to be searched; and (c) particularly describe the things to be seized." § 46-4-111(2). Otherwise, the Coroner has authority to investigate the death and seize evidence connected to the death without a warrant.

Whether the coroner's statutory duties to investigate a death would be an exception to the exclusionary rule under the independent source doctrine is an issue of first impression in Montana. However, neighboring states with similar statutes have allowed the admission of some evidence obtained in this way. In *Oregon v. Blasingame,* the Court of Appeals of Oregon decided that evidence found as a result of the coroner investigation was permitted as the medical examiner had authority to take control of the dead body. 127 Ore. App. 382, 386-387, 873 P.2d 361 (1994). Similarly to Mont. Code Ann § 46-4-111, Oregon statute § 146.107 provides, "A medical examiner, medical-legal death investigator or district attorney may enter any room, dwelling, building or other place in which the medical examiner, medical-legal death investigator or district attorney has reasonable cause to believe that a body or evidence of the circumstances of death requiring investigation may be found." In *Blasingame*, a medical examiner was called to the scene of a suspected suicide. *Blasingame*, 127 Ore. App. at 384. The house was unattended, and the medical examiner entered the residence to find a dead body and blood, but no weapons were located on a cursory search. *Id.* Later, the medical examiner re-entered the residence and turned the body over. *Id.* in that process, the medical examiner observed that no weapon was present, indicating to the medical examiner that the death was not a suicide. *Id.* At no time during that process did the medical examiner have a warrant. *Id.* The Oregon Appeals Court held that the search was admissible under O.R.S.

§ 146.107, as it gave the medical examiner authority to exercise control over and collect evidence connected to the dead body. *Blasingame*, 127 Ore. App. at 377.

In California, the Court of Appeal for the Second District held similarly. The Appeals Court held in *People v. Superior Court (Chapman)*, 204 Cal. App. 4th 1004, 1023, 139 Cal. Rptr. 3d 298 (2012), that the coroner's finding of a shell casing and depression under a body would have inevitably been discovered as a part of the coroner's normal course of his legal duties. The Appeals Court found that because there was a dead body in a residence it was reasonable to expect the coroner would have been notified of the death and conducted his own investigation as prescribed by law. *Id.*

Just as in *Blasingame* and *Chapman*, a coroner investigation in Montana would be a distinct and independent basis for the collection of the body and evidence related to the death of an individual. Such investigation would have allowed the discovery of the body, his gunshot wounds and related evidence of the circumstances of the death. In both the cited cases, the respective courts allowed the seizure of instrumentalities of the offenses. Here, the Coroner of Park County has independent authority to obtain "evidence of the circumstances of a death" that, in this case, would have included the weapon, casings, bullets, fragments and related evidence seized. Regardless of the search warrant, and in accordance with the other courts who have held that a coroner or medical examiner's legal obligations are separate and independent from law enforcement, this Court should hold that the body, and evidence of the death are admissible under the exception.

## CONCLUSION

The State concedes that the writings seized as a part of this challenged search warrant should be excluded as outside the breadth and specificity required under Montana law. It follows under controlling case law that the

later writings obtained in a subsequent search warrant without independent or other exception would also be excluded under the "fruit of the poisonous tree" doctrine. However, the remaining items under the search warrant, including the trailer, body, firearm, ammunition, casings, bullet fragments, photos and other evidence should not be suppressed. This Court should grant the deference the law requires and find on behalf of the State.

Dated this 1st day of March, 2024.

MICHAEL J. GEE
SELENE KOEPKE
Assistant Attorneys General
Special Deputy Park County Attorneys

KENDRA LASSITER
Park County Attorney

BY: SELENE KOEPKE

## CERTIFICATE OF SERVICE

I, Selene Marie Koepke, hereby certify that I have served true and accurate copies of the foregoing Answer/Brief - Response to the following on 03-01-2024:

George Snow Isham (Attorney)
502 South 19th Ave., Suite 211
Bozeman MT 59718
Representing: Kadin Lewis
Service Method: eService

Anne Michele DeWolf (Attorney)
Office of the State Public Defender
502 South 19th Avenue
Ste 211
Bozeman MT 59718
Representing: Kadin Lewis
Service Method: eService

Kendra K. Lassiter (Govt Attorney)
414 E.Callender St.
Livingston MT 59047
Representing: State of Montana
Service Method: eService

Michael Joshua Gee (Govt Attorney)
2225 11th Ave.
Helena MT 59601
Representing: State of Montana
Service Method: eService

Hon. Katherine Bidegaray
Service Method: Email
E-mail Address: kbidegaray@mt.gov

Electronically signed by Maggie Sowisdral on behalf of Selene Marie Koepke
Dated: 03-01-2024