**JEFFREY K. STARNES**
**BENJAMIN D. HARGROVE**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT 59403**
**119 First Ave. North, #300**
**Great Falls, MT 59401**
**Phone: (406) 761-7715**
**FAX: (406) 453-9973**
**Email: Jeff.Starnes@usdoj.gov**
        **Benjamin.Hargrove@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 23-143-BLG-SPW** |
| **Plaintiff,** | |
| **vs.** | **UNITED STATES RESPONSE TO DEFENSE MOTION TO SUPPRESS EVIDENCE** |
| **KADIN HAWKEYE LEWIS,** | |
| **Defendant.** | |

## INTRODUCTION

In September 2022, Park County Sheriff's Office received a report of a dead

body in a travel trailer that appeared to have been beaten up.    A sheriff's detective

with fifteen years of experience responded and confirmed there was reason to

believe that individual was the victim of homicide.    The detective obtained a warrant to search the trailer for evidence of homicide, including specific categories of biological material, weapons, and identifying information connected with the crime.    A second warrant authorized seizure of the trailer itself to preserve the murder scene.    Approximately two months later, a federal search warrant was sought based on a detailed affidavit summarizing the investigation.

Lewis asserts that the two state search warrants lack sufficient facts to establish probable cause, that they do not describe the items to be seized with sufficient particularity, and that they are facially overbroad.    Lewis thus contends all evidence seized during the execution of those warrants must be suppressed.

The Court should deny the motion for four reasons.    First, although sparse, the warrants contain sufficient information—a dead body with evidence of injuries—from which a neutral magistrate could determine a fair probability that a violent crime had been committed and evidence of that crime would be contained in the trailer.    Second, the warrants sufficiently describe the place to be searched—the travel trailer where a dead body was located—and the items to be seized—evidence connected to a violent crime as well as evidence that may identify who had access to the crime scene.    They are, thus, sufficiently particular and not unconstitutionally overbroad under the Fourth Amendment.    Third, even

if there were a defect with either state warrant, each warrant was obtained and executed in good faith by law enforcement.    Finally, suppression is not the appropriate remedy because even if any suppressible evidence from the state warrants were shorn from the federal warrant (*i.e.*, if one or more categories of items were found to be overbroad), the federal warrant still contains ample probable cause to support a search, and the evidence would have been inevitably discovered.

Accordingly, there is no constitutional defect here that requires suppression of evidence.

## STATEMENT OF FACTS

The defense motion correctly sets forth the facts regarding the two search warrants obtained by Park County Sheriff's Office.    On September 19, 2022, at approximately 8:22 am, Park County Sherriff's Office (PCSO) Deputies were called to investigate reports of a dead body in a travel trailer on East River Road in Park County, Montana.    Govt Ex. 1 at 2, 6.    PCSO Deputies who initially arrived at the scene observed the deceased man in a trailer known to be occupied by the defendant and it appeared the man had died from gunshot wounds.    *Id.,* at 2, 6. Officers secured the scene and initiated a homicide investigation.

At 12:20 pm on September 19th, PCSO Detective Brian Green signed an

affidavit in support of a search warrant, case No. 2022-67, seeking to search the

travel trailer where the body was located ("Search Warrant 1). *See* Defense

Exhibit A (Doc. 88-1).   The application states:

1. That the crime under investigation is Deliberate Homicide (§ 45-5-102);

2. That the items to be searched for are evidence, contraband, or person connected to the offense include DNA, blood, firearms, ammunition, firearms accessories, shell casings, clothing, human tissue, gunshot residue, photographs, hair, edged weapons, bullets, cell phones, electronics, computers, recording devices, cameras, dangerous weapons, fingerprints, and personal papers and effects;

3. That the place to be searched is a white Road Ranger Extreme travel trailer with VIN # 1KT252T2922296258 located on a property owned by Chad Standish with an address on East River Road in Pray; and

4. The facts supporting the application include:

   On Monday September 19, 2022 at approximately 0822 hours, property owner Chad Standish called Park County Dispatch to report the discovery of a dead body in a travel trailer on his property that he thought was beaten up.   Upon my arrival at approximately 0915 hours, I located a white male deceased in a white Road Ranger Extreme travel trailer.   Initial investigation indicated the death of the male subject may have been the result of foul play.

*See id.*, at 2.   The remainder of the affidavit focuses on Detective Green's training

and experience in law enforcement, types of investigations he has conducted in his

career, and his knowledge that DNA and other biological material can be left at

crime scenes through various methods.   *See id.*, at 3.   At 12:24 pm, The

Honorable Brenda R. Gilbert, with the Montana Sixth Judicial District, signed the

4

warrant authorizing the search of the trailer for items requested by the application. *See id.*

Officers began to search the trailer at 12:35 pm.    Govt. Ex. 1 at 7.    During the search, officers seized numerous items from the trailer, including a .22 caliber revolver and ammunition, a Glock magazine, expended bullets, biological material, and handwritten documents, journals, and diaries.    *See id.*, at 7-8.    It was immediately apparent that some of the writings identified Lewis, showed his fascination with school shootings and school shooters, and revealed a plan to shoot up the nearby high school, Chico Hot Springs, and other hot springs around Montana when he turned 21.    *See id.*, at 7.    One page, found loose in a duffle bag with a firearm and a plastic mask, was titled "Kadin Lewis is the school shooter." *Id*.    *See also* Govt Ex. 5.

In a cabinet above the couch, law enforcement located seven completed Molotov cocktails, including bottle, wick, and liquid fuel with an odor resembling kerosene.    Govt Ex. 1 at 7.    Deputies also located two more glass jugs and a duffel bag containing soda bottles—all of which had fabric wicks in them but did not contain liquid fuel. *Id*.    A box of rag strips, which Detective Green presumed to be additional wicks was found in a separate cabinet.    *Id*.

Following the initial search, Detective Green submitted a second warrant application, Cause No. 2022-65, seeking additional authorization to seize the trailer

5

itself (Search Warrant 2).    Defense Exhibit B, (Doc. 88-2).    The second warrant is virtually identical to the first, except it adds the Road Ranger Extreme trailer to the affidavit's list of items to be seized.    *See id*., at 1, 4.    Judge Gilbert issued the second warrant at 3:20 pm on September 19, 2022.    *See id*., at 5.    The trailer was seized and towed to a secure storage facility.    Govt. Ex. 1 at 8.    Prior to towing the trailer, officers removed the Molotov cocktails from the trailer, emptied the liquid contents, and left them at the scene for public safety.    *See* Govt. Ex. 2 at 1.

At approximately 3 pm, Lewis and his mother, Rachel Marker, arrived at the Sheriff's Office.    Govt. Ex. 1 at 2.    After speaking with the defendant's mother, and another witness (Dale Turner), deputies arrested Lewis and charged him with deliberate homicide.    *See id.*, at 2-3.

On November 21, 2022, FBI Special Agent Matthew Deurmeier obtained a warrant from a federal magistrate judge that authorized an additional search of the trailer.    *See* Govt. Ex. 3.    At that time, the trailer was located in a secure storage facility following its seizure on September 19, 2022.    *See id.*, at 1.    In an affidavit filed in support of the warrant, SA Deurmeier provides a number of details regarding the investigation, including:

- On September 19, 2022, a property owner in Park County, Montana reported to the PCSO the discovery of a dead body in a travel trailer located on the owner's property;

- PCSO deputies arrived and observed a deceased white male in a trailer

known to be occupied by defendant Lewis;

- That initial observations indicated the death was the result of gunshot wounds;

- That Lewis was charged with homicide in Park County;

- That PCSO deputies obtained a warrant to search the trailer and during the initial search, they observed white supremacist and Nazi rhetoric and symbols written and spray-painted on the walls;

- That inside a duffel bag, officers observed and seized multiple pages of handwritten material which showed the author had a fascination with school shooters, and the material showed the author expressed a plan to target schools and hot spring locations in Montana;

- That inside the same duffel bag, officers discovered a .22 caliber revolver and black mask;

- That additional handwritten documents journals and diaries collected throughout the trailer showed the authors interest to commit an attack and that the author was inspired by mass shooters responsible for the Stoneman Douglas and Columbine school shootings;

- That, in one of the writings, the author detailed a plan to target Chico Hot Springs where he intended to kill 20 or 30 people, to throw Molotrov cocktails during the mass killing event, and contained a drawing of a figure wearing a specific outfit. The figure wore a black mask similar to the one found in the duffel bag, a black shirt, camouflage pants, military boots, gloves, a revolver, and Molotov cocktails strapped around the waist and across the chest as a bandolier; and

- That officers located in their search seven Molotov cocktails—complete with bottles, wicks, and liquid fuel that smelled of kerosene, as well as the components to make additional Molotov cocktails.

*See* Govt. Ex. 3 at 8-14.    SA Deurmeier's search warrant sought evidence related

to the federal crime of possession of unregistered destructive devices, in violation

of 26 U.S.C. § 5861(d), and whether the crime, in this case, met the definition of a federal crime of domestic terrorism, as defined by 18 U.S.C. § 2331(5).   *See id.*, at 6, 15-16.

On November 23, 2022, the FBI, with the assistance of the Park County Sheriff's Office, executed a search warrant on the trailer.   *See* <u>Govt. Ex. 4</u>. During his search, SA Deurmeier took a number of photographs and collected additional evidence, including 3 glass bottles with rags, 2 gallon-sized bottles with wicks, writings, drawings and journals that had not yet been seized during the prior searches by PCSO, a plastic bag with writings, and 32 glass bottles with wicks in them.   *See id.*

## LAW AND ARGUMENT

If a search and seizure complied with federal constitutional standards, the evidence is admissible in Federal Court.   *United States v. Chavez-Vernaza*, 844 F.2d 1368 (9th Cir. 1987); *Elkins v. United States*, 364 U.S. 206 (1960); *United States v. Miranda-Guerena*, 445 F.3d 1233 (9th Cir. 2006).   Moreover, when a search has been conducted pursuant to a warrant, the defendant bears the burden of showing the search was unlawful.   *Franks v. Delaware*, 438 U.S. 154, 156 (1978); *United States v. Brock*, 667 F.2d 1311, 1317-18 (9th Cir. 1982); *Chin Kay v. United States*, 311 F.2d 317, 321 (9th Cir. 1962).

8

1.    **Adequate probable cause exists for the search of the travel trailer.**

The defense contends that all evidence obtained during the search of the trailer must be suppressed because the search warrants are not supported by carefully delineated probable cause and were not tailored to any specific facts. *See* (Doc. 87) at 5.   The defense's contention is wrong.

As noted above, because law enforcement initially searched the trailer pursuant to two search warrants, albeit with nearly identical probable cause statements, Lewis bears the burden of demonstrating that the search was unlawful.  *Franks,* 438 U.S. at 156.   For a search warrant to be constitutional, the Fourth Amendment requires two primary showings:   (1) the warrant must be specific; it must clearly state what is sought and particularize the area of search; and (2) it must be limited in scope according to the probable cause on which it was issued.  *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993).   To demonstrate probable cause, law enforcement must justify their belief in the necessity of the search itself and limit the search only to places and things that are reasonably anticipated on the evidence.  *Id.*

Additionally, the existence of probable cause must be found by a neutral and detached judge, *Johnson v. United States*, 333 U.S. 10, 14 (1948), and is assessed by common-sense rather than hyper-technical interpretations, *Illinois v. Gates*, 460 U.S. 213, 235-36 (1983).   "The task of the issuing magistrate is

simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*, at 214. And "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.*

"Probable cause . . . is not a high bar[.]" *Kaley v. United States*, 571 U.S. 320, 338 (2014). Probable cause is "a reasonable ground for belief of guilt," and "means less than evidence which would justify condemnation or conviction." *Brinegar v. United States,* 338 U.S. 160, 175 (1949) (internal citations and quotations omitted). "Probable cause exists where the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.*, at 175-76 (cleaned up) (citing *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

To find probable cause, the magistrate judge need only find that there is a "fair probability" that the search will reveal "evidence of a crime." *Gates,* 462 U.S. at 238. Whether probable cause existed to issue the warrant is examined under the "totality of the circumstances." *Id.* The "totality of the circumstances" requires courts to consider "the whole picture," *United States v. Cortez*, 449 U.S.

411, 417 (1981).  *See District of Columbia v. Wesby*, 583 U.S. 48, 60-61 (2018) ("Our precedents recognize that the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation.").

Here, the warrants contain sufficient facts to support probable cause to search.  The warrants indicate that PCSO was investigating the crime of deliberate homicide, in violation of Mont. Code Ann. § 45-5-102, due to the following:  (1) a property owner, Chad Standish, called into Park County and reported the discovery of a dead body; (2) the body was located in a travel trailer on his property; (3) Standish thought the body was "beaten up;" (4) that Detective Green responded to the scene and located the body in a travel trailer as reported by Standish; and (5) Detective Green's initial investigation indicated the death of the male may have been the result "foul play."

These facts show that there was a dead body in the place to be searched and two sources indicated the body appeared to have suffered from violence. Standish describes the body as "beaten up."  The Oxford English Dictionary defines the phrase "beaten up" as "Of a person or part of the body:  hit or struck repeatedly with heavy blows; (visibly) injured or assaulted."[1]  Detective Green indicates that the death may have been the result of "foul play."  The phrase

---

1  Oxford English Dictionary, *beaten-up*, https://www.oed.com/dictionary/beaten-up_adj?tab=meaning_and_use#11794548 (accessed July 15, 2025)

"foul play" is defined as "violence, especially murder."[2]    Synonyms for "foul play" include "murder, homicide, killing, and blood."    *See id.*    Thus, two sources describe the place to be searched as containing a dead body that appears to have met a violent end.

Moreover, Detective Green's inference that the death was the result of violence is entitled to deference.    *See United States v. Parks*, 285 F.3d 1133, 1142 (9th Cir. 2002) ("[T]he court issuing the warrant is entitled to rely on the training and experience of police officers.").    Although the Court need not look past the four corners of the warrant in determining probable cause, Lewis has no argument that Detective Green's statement regarding the probability that the death was the result of foul play or violence was misleading or omitted facts that would cast doubt on probable cause.    This is borne out by the detail included in the subsequent federal warrant noting that "[i]nitial observations indicated the death was a result of gunshot wounds."    Govt. Ex. 3 at 9.

Undoubtedly, the probable cause statements in Search Warrants 1 and 2 are sparse, but that does not make them constitutionally deficient.    The Supreme Court has recognized that affidavits are "normally drafted by nonlawyers in the midst and haste of a criminal investigation," that "[t]echnical requirements of

---

2 Merriam-Webster Dictionary, *foul play,* https://www.merriam-webster.com/dictionary/foul%20play (accessed July 15, 2025).

elaborate specificity once exacted under common law pleadings have no proper place in this area," and a "grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States v. Ventresca*, 380 U.S. 102, 109 (1965).   Courts have thus concluded that "[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.*, at 109.  *See also United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007) ("In borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it.").

Here, reviewing the probable cause statement in its totality, Detective Green's use of "foul play" to describe the deceased, as well as Standish's description that the deceased body appeared "beaten up," provides a reasonable basis for Judge Gilbert to conclude that the deceased suffered from a violent, criminal act that caused his death.   There is a fair probability that evidence connected with the cause of death would be in the place where the body is located.   Because law enforcement presented these facts to a neutral judge who authorized the search, this Court should accord deference to Judge Gilbert's

determination that probable cause existed to search.   *See Ventresca*, 380 U.S. at 109; *see also Crews,* 502 F.3d at 1135.

### 2.  The search warrants are sufficiently particular.

The Fourth Amendment requires that a warrant particularly describe both the place to be searched and the person or things to be seized.   *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).   *See United States v. Grubbs*, 547 U.S. 90, 97 (2006).

### A.  The warrants describe the place to be searched with sufficient particularity.

The United States Supreme Court holds "It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *United States v. Brobst*, 558 F.3d 982, 991 (9th Cir. 2009) (citing *Steele v. United States,* 267 U.S. 498, 503 (1925)).   The test for determining the validity of a warrant is (1) whether the warrant describes the place to be searched with 'sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort,' and (2) whether any reasonable probability exists that the officers may mistakenly search another premise." *Brobst,* 558 F.3d at 991-92 (cleaned up) (citing *United States v. Mann,* 389 F.3d 869, 876 (9th Cir.2004).

Here, the warrants authorize the search of a specific white Road Ranger

Extreme travel trailer, with a specific vehicle identification number, located on a specific property owned by Chad Standish with a specific address located East River Road in Pray, Montana.   Given the specificity contained in the warrant, there can be no doubt that the place to be searched is sufficiently described to ensure officers search the correct premises.

### B. The warrants describe the things to be seized with sufficient particularity and the things to be seized are each supported by probable cause.

Likewise, the warrants' identification of things to be seized is sufficiently particular to pass constitutional muster.   The Fourth Amendment requires that a warrant describe with particularity the "things to be seized." U.S. Const. amend. IV; *Brobst*, 558 F.3d at 993.   Search warrants must be specific in both particularity and breadth.   *Brobst,* 558 F.3d at 993.   "Particularity is the requirement that the warrant must clearly state what is sought."   *Towne*, 997 F.2d at 544.   "Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based."   *Id.*

The description in the warrant must be specific enough to enable the person conducting the search to reasonably identify the things authorized to be seized.   *Spilotro*, 800 F.2d at 963.   The specificity required varies depending on the circumstances of the case and the type of items involved.   *United States v. Rude,* 88 F.3d 1538, 1551 (9th Cir. 1996).   In determining whether a description is

sufficiently precise, Courts must concentrate on one or more of the following: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. *See Spilotro*, 800 F.2d at 963.

A magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found. *United States v. Fannin*, 817 F.2d 1379 (9th Cir. 1987); *United States v. Sayakhom*, 186 F.3d 928, 934 (9th Cir. 1999) (in a case concerning mail fraud, the postal inspector's affidavit which stated "his experience and belief that operators of businesses that involve paperwork typically maintain and carry business records into and out of their offices, in their cars and to and from their residences" was sufficient to affirm the magistrate's determination that probable cause existed to search the defendant's vehicle and residence). The warrants in this case provide a specific list of things to be seized in connection with deliberate homicide:

THAT I have reason to believe that the following crime has been committed in Park County, Montana:

**Deliberate Homicide (§ 45-5-102);**

THAT the evidence, contraband, or persons connected with the aforementioned crime(s) include:

**DNA, blood, firearms, ammunition, firearms accessories, shell casings, clothing, human tissue, gun shot residue, photographs, hair, edged weapons, bullets, cell phones, electronics, computers, recording devices, cameras, dangerous weapons, fingerprints, personal papers and effects,**

Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible. *Spilotro*, 800 F.2d at 963. *See United States v. Cardwell,* 680 F.2d 75, 78 (9th Cir.1982). Here the warrants authorize the collection of 21 specific categories of evidence which are "evidence, contraband, or persons connected to" the crime of deliberate homicide. Moreover, there is probable cause to seize the items set forth above. Generally, the list of items to be seized includes biological material, weapons and weapons accessories, forensic evidence tied to the use of a gun, and items that could be used to shed light on the motive of circumstances of the death.

With respect to the biological evidence sought by the warrants—DNA, blood, clothing human tissue, hair, and fingerprints—it is reasonable to seek to recover biological material at the scene where a murder victim is located. Such evidence could be used to identify the perpetrator, potential witnesses to the crime, and aid in discovering the events that lead to the homicide. Moreover, Detective

Green's probable cause statement indicates that, based on his training and experience, biological material can be left at a crime scene in many forms. Clearly, evidence of this sort would be both relevant and helpful in a homicide investigation.

With respect to the weapons and weapons accessories sought by the warrants—firearms, ammunitions, firearms accessories, edged weapons, bullets, and dangerous weapons—in the context of a homicide scene, such items are clearly relevant to determining, among other things, how the person was killed and whether any of the items sought was used in the killing.

With respect to forensic evidence tied to the use of a gun—gunshot residue and shell casings—are reasonably tied to determining how the victim was killed.

Finally, with respect to items used to identify people or to document the crime scene itself—cell phones, electronics, computers, recording devices, cameras, and personal papers and effects—it is reasonable to conclude that at a homicide scene, personal papers and effects in particular, could be used to identify the victim, the perpetrator, or anyone else who would have access to the area and may have useful information to provide to investigators.

Far from a fishing expedition, the warrants here particularly describe the place to be searched and the things to be seized with sufficient particularity. Common sense dictates that there was a fair probability that the items to be seized

would assist investigators in a homicide investigation. Each item sought is thus supported by sufficient probable cause. And, because this was an initial homicide investigation, Detective Green could not have more specifically described the items that could be located at the homicide scene and reasonably likely to aid the investigation. Under the circumstances of this case, as presented to the judge who signed the warrant, there is a sufficient basis to uphold the search, and the items seized from it.

Finally, the Ninth Circuit has "embraced the doctrine of severance, which allows [a court] to strike from a warrant those portions that are invalid and preserve those portions that satisfy the Fourth Amendment. Only those articles seized pursuant to the invalid portions need be suppressed." *United States v. Flores*, 802 F.3d 1028, 1045 (9th Cir. 2015). Even if the Court were to find certain categories of items in the search warrant were overbroad, it should only strike those portions it finds invalid, not items properly subject to the search or incriminating items discovered in plain view during the course of the search. *See, e.g., United States v. Brown,* 984 F.2d 1074, 1077 (10th Cir. 1993) ("[I]nfirmity due to overbreadth does not doom the entire warrant; rather, it "requires the suppression of evidence seized pursuant to that part of the warrant ..., but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized-on plain view grounds, for example-during their execution)."

19

Here, there is no question that there was probable cause to seize biological evidence, including the body, and to seize the trailer to preserve the crime scene—evidence that is the heart and soul of a homicide investigation.  This is critical because, as discussed below, even if certain categories of evidence were found to be invalid and excised from the subsequent federal search warrant, there remains ample probable cause for that warrant to issue.

Additionally, there can be no doubt that in the context of a violent homicide, there is a reasonable basis to search for weapons at the crime scene.  This is important because deputies located several of Lewis's writings in the same duffel bag where a .22 caliber revolver was located, including a document entitled "Kadin Lewis the school shooter." *See* <u>Govt. Ex. 1</u> at 7; <u>Govt. Ex. 3</u> at 9-10; <u>Govt. Ex. 5</u>. Within that document, the homicide victim is referenced by name.

"When conditions justify an agent in examining a ledger, notebook, journal, or similar item, he or she may briefly peruse writing contained therein."  *United States. v. Issacs*, 708 F.2d 1365, 1370 (9th Cir. 1983).  "The justification may arise from a reasonable suspicion to believe that the discovered item is evidence, or it may arise from the authority conferred by a warrant to search for certain items which might reasonably be expected to be found within such a book."  *Id.* (internal citations and quotation marks omitted).  "In either case, the plain view doctrine would permit brief perusal of the book's contents and, consequently, its

seizure if such perusal gives the examining agent probable cause to believe that the book constitutes evidence." *Id.*; *see also United States v. Seljan*, 547 F.3d 993 (9th Cir. 2008) (plain view appropriate where customs inspector could see incriminating nature of letter from the first paragraph); *United States v. Hillyard*, 677 F.2d 1336, 1341 (9th Cir. 1982) (incriminating log book "properly could have been perused as evidence in plain view at the time the truck was seized, and could have been seized once their contents were known"); *United States v. Damitz*, 495 F.2d 50, 56 (9th Cir. 1974) (plain view seizure upheld after perusal revealed incriminating nature of drug ledger).

Upon searching the duffel bag in which deputies later found a .22 caliber pistol with potential red spatter on the barrel, *see* Govt. Ex. 1 at 7, deputies located several writings that were immediately incriminating, including showing the author had a fascination with school shooters and an apparent plan to commit a killing at the high school or Chico Hot Springs. *See* Govt. Ex. 5. Because officers had probable cause to search the bag for weapons and found the writings in plain view during the search of that bag, there is no basis to suppress Lewis's writings located inside or other writings of an immediately incriminating nature located in plain view, even if the Court determines some aspects of the warrant are overbroad. For the same reason, the Court should not suppress the Molotov cocktails under an overbreadth argument because they were located in places where weapons might

reasonably be contained.

### 3. Law enforcement officers obtained and executed the search warrants in good faith.

Even if this Court were to find a defect in one or more of the warrants, the evidence should not be suppressed because law enforcement acted in good faith. *See United States v. Leon*, 468 U.S. 897 (1984).  "[T]he exclusionary rule is not an individual right and applies only where it results in appreciable deterrence." *Herring v. United States*, 555 U.S. 135, 140 (2009).  The Supreme Court has recognized that, the exclusion of evidence "has always been our last resort, not our first impulse."  *Id.* "The rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application."  *Id.*, at 701. "[A]n assessment of the flagrancy of the police misconduct constitutes an important step in the calculus of applying the exclusionary rule." *Id.*  Moreover, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *United States v. Al Nasser*, 555 F.3d 722, 726 (9th Cir. 2009).

As the Supreme Court directed, "evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth

Amendment." *Herring*, 555 U.S. at 140-41; *see also United States v. McCane*, 573 F.3d 1037, 1042-45 (10th Cir. 2009) (upholding district court's decision to not apply the exclusionary rule even where evidence was gathered in an invalid search incident to arrest of the vehicle).

In *Leon*, the Supreme Court held that a motion to suppress evidence obtained by an invalid search warrant could be denied if the officers who obtained the evidence had a reasonable belief in its validity. *Id.*, at 897.   The objective test is whether "a reasonable, well-trained officer would have known that the search was illegal despite the Magistrate's authorization." *United States v. Brown*, 951 F.2d 999, 1004 (9th Cir. 1991).   The good faith exception is not available, however, in certain situations for example where the magistrate issuing the warrant was misled by an affiant's dishonesty or where the magistrate abandoned his neutral judicial role.   *Leon*, 468 U.S. at 923.

In this case, law enforcement acted in good faith reliance on the search warrants issued by neutral and detached judges.   Lewis does not argue that officers misstated facts or mislead the court that issued the warrants.   As noted above, the detective's inference that the victim's death was the result of foul play or violence is amply supported.   Though the facts contained in the search warrants are admittedly sparse, they convey the essential basis for believing the trailer likely contained evidence of the crime of homicide, and a neutral judge found them

sufficient and authorized the search.

There is no police misconduct here that must be corrected or punished by exclusion of evidence.   The officers acted lawfully and prudently, and thus, no deterrent effect would be achieved by suppressing the evidence in this case.

### 4. Suppression is inappropriate for evidence subject to a valid federal search warrant.

As argued above, the state search warrants contain constitutionally sufficient probable cause and meet the particularity requirements of the Fourth Amendment. If the Court were, however, to find some categories of items listed in the warrant to be overbroad, the Court must then consider whether the subsequent federal search warrant, if shorn of the tainted evidence, nevertheless contains sufficient probable cause.

Under the independent source exception, "information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source."   *United States v. Heckenkamp*, 482 F.3d 1142, 1149 (9th Cir. 2007) (quoting *Murray v. United States*, 487 U.S. 533, 538–39 (1988).   Therefore, the Ninth Circuit has held that "[t]he mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant."   *Id.* (quoting *United States v. Reed*, 15 F.3d 928, 933 (9th Cir.1994)).   To determine whether evidence obtained through a tainted

warrant is admissible, "[a] reviewing court should excise the tainted evidence and determine whether the remaining untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *Id*. (quoting *Reed,* 15 F.3d at 933).

In this case, it is clear that even if the written material seized from the first search were excised from the federal warrant, the federal warrant remained supported by ample probable cause.   In addition to the dead body with a gunshot wound in Lewis's trailer, the warrant detailed (including with photographs) "white supremacist and Nazi rhetoric and symbols written and spray-painted on the walls," <u>Govt Ex. 3</u> at 9, "nine Molotov cocktails complete with bottle, wick and liquid fuel," *id*., at 13, and a duffle bag with a revolver, ammunition, and a black plastic mask. *Id.*, at 10.   These items alone provide probable cause for possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d), and provide ample probable cause to search Lewis's trailer, for evidence related to "domestic terrorism" as defined in 18 U.S.C. § 2331(5).   That evidence reasonably includes "[d]ocuments and or literature related to the construction of destructive devices or explosives," "evidence of occupancy, control, or ownership of the property," and "[a]ny journals, writings, documents, or drawings indicating the planning or preparation for a crime of domestic terrorism."   *See id.*, at 20.

Items searched subject to those categories should not be suppressed even if

they also fell within overbroad categories in the initial warrant.   "Invoking the exclusionary rule would put the police (and society) not in the *same* position they would have occupied if no violation occurred, but in a *worse* one." *Murry v. United States*, 487 U.S. 533, 541 (1988) (emphasis in original).

## CONCLUSION

In this case, both state and federal law enforcement unquestionably acted in good faith to seek the approval of a neutral magistrate in the context of investigating very serious crimes.   The magistrate acting with common sense determined that there was sufficient probable cause—a dead body that appeared to have died by violence—to search the crime scene for evidence reasonably related to the murder.   With due deference to the issuing magistrate, there is no basis on which to second guess that decision.   Even if there was a technical violation in the warrant, the officers relied on it in good faith, and a subsequent federal warrant, even if purged of any taint, demonstrates independent probable cause to search for evidence of federal crimes. Suppression in this case would impede the prosecution of a serious offense because of what was, at most, a technical error in a situation where officers acted with every intention of honoring the constitution.

## EXHIBITS

- <u>Govt Ex. 1</u> – Park County Incident Report for September 2022, 15 pages (filed under seal);

- <u>Govt Ex. 2</u> – FBI Report on Collection of Molotov Cocktails, dated October 17, 2022, 7 pages (filed under seal);

- <u>Govt Ex. 3</u> – Federal Search Warrant, Cause No. MJ 22-158-BLG-TJC, dated November 21, 2022, 25 pages (filed under seal);

- <u>Govt Ex. 4</u> – FBI Report on Execution of Federal Search Warrant, dated November 28, 2022, 13 pages (filed under seal);

- <u>Govt Ex. 5</u> – Photograph of Search of Duffel Bag, dated September 22, 2025, 9 pages (filed under seal)

DATED this 17th day of July 2025

KURT G. ALME
United States Attorney

/s/ *Jeffrey K. Starnes*
JEFFREY K. STARNES
BENJAMIN D. HARGROVE
Assistant U.S. Attorneys

## CERTIFICATE OF COMPLIANCE

I hereby certify that this notice is proportionately spaced, has a typeface of 14 points or more, and the body of the brief contains 5,985 words excluding the caption, certificates, and exhibit list.

DATED this 17th day of July 2025,

KURT G. ALME
United States Attorney


/s/ *Jeffrey K. Starnes*
JEFFREY K. STARNES
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2025, a copy of the foregoing document was

served on the following persons by the following means:

(1, 2) CM/ECF
( )    Hand Delivery
( )    U.S. Mail
( )    Overnight Delivery Service
( )    Fax
( )    E-Mail


1.    Clerk, U.S. District Court

2.    Steven Babcock and Gillian Gosch
      Assistant Federal Defenders
      Counsel for Defendant


*/s/ Jeffrey K. Starnes*
Assistant U.S. Attorney
Attorney for Plaintiff