JEFFREY K. STARNES
BENJAMIN D. HARGROVE
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 3447
Great Falls, MT 59403
119 First Ave. North, #300
Great Falls, MT 59401
Phone: (406) 761-7715
FAX: (406) 453-9973
Email: Jeff.Starnes@usdoj.gov
        Benjamin.Hargrove@usdoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> KADIN HAWKEYE LEWIS, <br><br> Defendant. | CR 23-143-BLG-SPW <br><br> UNITED STATES RESPONSE TO DEFENSE MOTION TO DISMISS THE SUPERCEDING INDICTMENT |

## INTRODUCTION

The United States, by and through Jeffrey K. Starnes and Benjamin D. Hargrove, Assistant U.S. Attorneys for the District of Montana, hereby responds to

the defendant, Kadin Lewis' Motion to Dismiss the Superseding Indictment, filed on June 30, 2025. (Doc. 85). Relying on *United States v. Beckstead* 500 F.3d 1154 and its progeny, Lewis contends that the explosive fuel inside his Molotov cocktails was potentially exculpable evidence and the government acted in bad faith by dumping it out before transporting the evidence to a secure storage facility. Lewis is incorrect and his motion should be denied.

## STATEMENT OF FACTS

On September 19, 2022, Park County Sherriff's Office (PCSO) Deputies were called to investigate reports of a man shot to death inside a trailer home in Livingston, Montana. After the body was discovered, PCSO Detective Brian Green, obtained a search warrant for the trailer and seized numerous items including a .22 caliber revolver and ammunition, a Glock magazine, expended bullets, documents and journals belonging to Lewis, as well as items with suspected blood splatter on them. Gov. Exhibit. 1, USAO 368 (hereinafter cited using USAO page number only). Deputy Cindy Keith photographed the entire scene. USAO 367. In a cabinet above the couch, law enforcement located several glass bottles that resembled Molotov cocktails because they contained liquid fuel with fabric wicks sticking out of their tops. USAO 367. Detective Green noted that the bottles smelled like kerosene and described how the deputies "disarmed" the

Molotov cocktails by dumping them on the ground outside the trailer before towing it to an evidence facility. USAO 367. Deputies also located two more glass jugs and a duffel bag containing soda bottles—all of which had fabric wicks in them but did not contain liquid fuel. USAO 367. A box of rag strips, which Detective Green described as "additional wicks," was found in a separate cabinet. USAO 367. The trailer was seized pursuant to the state's warrant and towed. USAO 368.

Pursuant to a separate warrant, deputies also searched Lewis' mother's fifth wheel trailer located across the street from where Lewis was living at that time. USAO 368. Bloody tissues and clothing items, as well as ashes from a wood stove which were suspected to contain burnt clothing, were seized as well. USAO 368.

In the days following the search, local law enforcement contacted the FBI. On October 14, 2022, PSCO Detective Green, in coordination with the FBI, went back to where Lewis' trailer was previously located before it was towed to recover the Molotov cocktails that had been emptied out and left beside the trailer in the open. USAO 12. In total, Detective Green secured nine bottles, eight of which still had a visible amount of liquid inside. USAO 19. The rag wicks were found on the ground beside the bottles. USAO 21. ATF Taskforce Officer Jason Hopkin used a syringe to extract the remaining liquid from the bottles into separate glass vials for

3

storage and testing. USAO 19. The following items were seized and sent to the FBI laboratory for testing: nine glass bottles, eight vials of liquid, and seven rag wicks. USAO 12; 25.

The FBI lab results determined that all eight vials contained flammable liquid that tested negative for water and was indicative of "heavy petroleum distillates" (HBDs). USAO 723. The lab also identified "medium aromatic products" (MAPs) on the seven cloth rags that were originally found inside the bottles and recovered on the ground beside the bottles. USAO 723. The lab report explains that HBDs and MAPs are "ignitable liquids" such as kerosene, diesel fuel, automotive parts cleaners, etc. USAO 723. The liquids were tested in the laboratory and "readily ignited" when exposed briefly to a butane flame. USAO 728-29. The lab concluded that the bottles, liquid, and rags together constitute the components of seven Improvised Incendiary Devices (IID), also known as homemade firebombs or Molotov cocktails. USAO 799.

On July 8, 2025, the FBI confirmed that the remaining liquid fuel that was extracted from the bottles was sent back from the laboratory and is being stored in its evidence facility in Billings, Montana. USAO 2625.

## ARGUMENT

Under the Due Process Clause, criminal prosecutions must comport with

4

"prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The destruction of evidence rises to the level of a constitution violation only when the defendant makes two showings. *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013). First, that the government acted in bad faith, "the presence or absence of which 'turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed.'" *Id*. (quoting *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir.1993)). Second, that the missing evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984); *Cooper*, 983 F.2d at 931. If "no more can be said than it could have been subjected to tests," then the defendant must demonstrate bad faith on behalf of law enforcement. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).

The Ninth Circuit requires a showing of bad faith "where the evidence is only potentially useful and not materially exculpatory," meaning its exculpatory nature "*must be apparent*." *Sivilla*, 714 F.3d at 1172 (emphasis added). "Under either configuration of the test, the inquiry turns on whether any exculpatory value of evidence in the [item(s) at issue] was apparent to the government agents." *Id*. at 1172.

5

> The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.

*Arizona v. Youngblood*, 488 U.S. 51, 56 (1988).

In *United States v. Sivilla*, 714 F.3d 1168, 1170 (9th Cir. 2013), a border patrol inspection of a Jeep revealed a hand cut portion of the engine manifold that Sivilla and others were using to store a significant quantity of illegal drugs. It took an agent and a mechanic about two hours to remove the drugs from the engine. *Id*. The drugs were seized, and low-quality photographs were taken of the engine, but the Jeep was never seized. *Id*. The Court denied Sivilla's motion to dismiss the indictment for spoliation because, based on his testimony, the case agent did not believe there was evidentiary value in keeping the vehicle after they extracted the drugs and took pictures of the engine. *Id*. at 1171. The Court held that the government did not act in bad faith because while it was negligent not to preserve the Jeep, its evidentiary value "was not obvious" and "[a]ny exculpatory value of the Jeep itself was not apparent." *Id*. at 1172.

Here, there is no question that law enforcement dumped out the contents of the Molotov cocktails when they could have been preserved at the time of the original search. Law enforcement's decision to dump them, however, was because they were exercising caution to avoid transporting open containers of potentially

6

flammable liquid. This was done for public safety, not to destroy obviously exculpatory evidence. Moreover, once the FBI became involved, law enforcement acted promptly to secure the Molotov cocktails and extract the remaining liquid, which was tested to confirm its inculpatory nature.[1] Law enforcement was clearly not acting in bad faith by defusing potentially explosive devices in order to safely tow the trailer-turned-murder-scene to a secure location. And Lewis has failed to establish otherwise.

The question is whether it was apparent to the Livingston deputies *at the time* they were investigating a shooting death, that the Molotov cocktails had any exculpatory value. The clear answer is no. To whatever extent the deputies suspected additional criminal conduct by Lewis due to them observing some of his writings in the trailer, the defense offers no logical basis for how functional Molotov cocktails could be anything but *inculpatory*.

The only explanation Lewis offers to support his theory that dumping out the fuel handicaps his defense, is his vague assertion that being able to test the liquid would somehow prove exculpatory. Doc. 85, 5. His claim fails for two reasons. First, the laboratory determined, through testing, that each bottle and rag contained

---

1 Any arguments Lewis may raise with respect to the delay in obtaining samples of the ignitable liquids would go only to the weight of the evidence, not spoliation.

flammable liquid that together would function as homemade firebombs. USAO 799. Lewis gives no explanation for why having *more* liquid—which was already determined to be flammable—would prove exculpatory. Second, before filing his motion, Lewis has never inquired with the government about whether any of the liquid remains for testing. In preparation for its response, the government checked the evidence returned from the FBI laboratory and determined that some of the liquid remains after testing was complete. USAO 2625. Even if there had been no liquid left, Lewis has failed to establish bad faith required to prevail in his motion. But the issue is moot, given the existence of liquid which he is entitled to test.

## CONCLUSION

For the above reasons, Lewis' motion to dismiss the superseding indictment should be denied.

DATED this 17th day of July 2025

KURT G. ALME
United States Attorney

/s/ *Jeffrey K. Starnes*
JEFFREY K. STARNES
BENJAMIN D. HARGROVE
Assistant U.S. Attorneys

## CERTIFICATE OF COMPLIANCE

I hereby certify that this notice is proportionately spaced, has a typeface of 14 points or more, and the body of the brief contains 1,540 words excluding the caption and certificates.

DATED this 17th day of May 2025,

                                              KURT G. ALME
                                              United States Attorney

                                              /s/ *Jeffrey K. Starnes*
                                              JEFFREY K. STARNES
                                              Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2025, a copy of the foregoing document was served on the following persons by the following means:

(1, 2) CM/ECF
( )    Hand Delivery
( )    U.S. Mail
( )    Overnight Delivery Service
( )    Fax
( )    E-Mail

1. Clerk, U.S. District Court

2. Steven Babcock and Gillian Gosch
   Assistant Federal Defenders
   Counsel for Defendant

/s/ Jeffrey K. Starnes
Assistant U.S. Attorney
Attorney for Plaintiff

10