IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KADIN HAWKEYE LEWIS,<br><br>Defendant. | CR 23-143-BLG-SPW<br><br>ORDER ON MOTION TO DISMISS |

Before the Court is Defendant Kadin Hawkeye Lewis's Motion to Dismiss the Superseding Indictment Due to Spoilation (sic) of Evidence. (Doc. 84; Doc. 85 at 3). Lewis contends the Government destroyed potentially exculpatory evidence by failing to preserve the liquid in the glass bottles found at the scene and by leaving those bottles unattended outdoors for approximately three weeks. (Doc. 85 at 4). The Government opposes the Motion. (Doc. 96).

The Court held a hearing on this Motion, along with Lewis's other pending motions (Docs. 81, 86), on September 5, 2025. Testimony was provided by FBI Special Agent Matthew Deurmeier and Park County Sheriff's Office (PCSO) Detectives Brian Green and Jason Hopkin. For the following reasons, the Court denies Lewis's Motion.

1

I.  **Background**

On September 19, 2022, law enforcement received reports of a deceased male in Lewis's trailer home with an apparent gunshot wound to the back of his head. (Doc. 68 at 2; Doc. 78 at 6). Later that day, law enforcement executed a search warrant at the trailer home. (Doc. 97-1 at 3). Officers discovered the alleged murder weapon in Lewis's bedroom, along with writings reflecting Lewis's extreme ideology and intent to carry out a mass shooting. (*Id.*). In one entry, Lewis described a plan to commit a mass-casualty attack at Chico Hot Springs before his 21st birthday using firearms and Molotov cocktails. (*Id.*). During the search, officers discovered nine Molotov cocktails, each constructed from a glass bottle containing a rag wick and a flammable liquid they believed smelled of kerosene. (*Id.*). Before transporting the trailer to the county impound lot, the officers emptied the liquid from the bottles and left the bottles and extra rags discovered during the search at the scene. (*Id.*).

On October 14, 2022, PCSO Detectives Green and Hopkin, working in coordination with the FBI, returned to the trailer home to retrieve the bottles and rags. (*Id.* at 1–2). Detective Hopkin used a syringe to collect the trace amounts of liquid remaining in the bottles and transferred them into individual glass vials. (*Id.* at 2). The detectives then transported the bottles, vials, and rags to the Park County law enforcement complex. (*Id.*). FBI Special Agent Deurmeier subsequently took

custody of the items and prepared them for transport to the FBI lab for analysis. (*Id.* at 1).

The FBI lab determined the liquid extracted from the bottles contained heavy petroleum distillates (HPDs). (*Id.* at 7). The lab also detected residue of HPDs and medium aromatic products (MAPs) in the rags collected by law enforcement. (*Id.*). Both HPDs and MAPs are classified as ignitable liquids. (*Id.*). Based on these findings, the lab concluded that the evidence comprised components of Improvised Incendiary Devices (IIDs), commonly referred to as Molotov cocktails. (*Id.* at 10). The lab further determined that there was sufficient material to construct seven IIDs. (*Id.*). According to the Explosive and Hazardous Devices Examiner, the IIDs could be used to cause property damage, personal injury, or death. (*Id.*). Following its analysis, the lab returned the remaining liquid to the FBI's evidence facility in Billings, Montana, and verified that all eight evidence items still contain testable liquid. (*Id.* at 11).

## II. Legal Standard

Rule 12(b)(1) of the Federal Rules of Criminal Procedure provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). "[I]f the pretrial motion raises factual questions associated

with the validity of the defense, the district court cannot make those determinations." *United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010) (quoting *Shortt Acct. Corp.*, 785 F.2d at 1452).

The Court has determined Lewis's Motion is appropriate for pretrial resolution because it solely involves a question of law.

## III. Discussion

The Due Process Clause mandates that all criminal prosecutions adhere to "prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The destruction of potentially useful evidence constitutes a due process violation only where two conditions are satisfied. *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (citations omitted). First, the Government must have acted in bad faith, "the presence or absence of which turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." *Id.* Second, the missing evidence must be "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (quoting *Trombetta*, 467 U.S. at 489).

### A. Lack of Bad Faith

The Court concludes the Government did not act in bad faith. Lewis relies on *United States v. Zaragoza-Moreira*, 780 F.3d 971, 980 (9th Cir. 2015), in which the Ninth Circuit determined the government acted in bad faith after destroying evidence

4

it knew could be exculpatory. In that case, the defendant was apprehended at the U.S.-Mexico border carrying packages of methamphetamine and heroin and was interviewed by Homeland Security Investigations Agent Ashley Alvarado. *Id.* at 974–75. The defendant told Agent Alvarado that she had been coerced into transporting the drugs by two members of the cartel after running out of money. *Id.* at 975. She further explained that, while waiting in line at the Port of Entry, she attempted to draw the attention of Customs and Border Protection (CBP) agents because she did not want to smuggle the drugs. *Id.* at 975–76. According to the defendant, she "'wiggled around, 'patted her stomach,' and 'threw her passport on the ground' to draw attention to herself." *Id.* at 976.

Within a week of the defendant's arrest, her attorney sent a letter to the Assistant United States Attorney assigned to the case requesting that "any and all videotapes . . . which relate to the arrest or the events leading to the arrest [] in this case be preserved." *Id.* Two months later, after the district court ordered the government to preserve the video evidence, the United States Attorney's Office (USAO) requested the Port of Entry surveillance video from CBP. *Id.* at 976–77. CBP, however, informed the USAO that the footage had been automatically recorded over within 30 to 45 days of the arrest. *Id.* at 977.

The Ninth Circuit held that the government acted in bad faith because the defendant "repeatedly alerted [Agent] Alvarado to her duress claim and the potential

5

usefulness of the pedestrian line video footage." *Id.* at 979. Agent Alvarado testified that she understood a defendant coerced into committing a crime may assert a duress defense and that she had a professional obligation to preserve exculpatory evidence. *Id.* at 980. The court concluded that, "in light of the apparent value of the video evidence, which was known to Agent Alvarado, her actions . . . [were] sufficient to establish that she made a 'conscious effort to suppress exculpatory evidence.'" *Id.* (quoting *Trombetta*, 467 U.S. at 488).

In *Sivilla*, by contrast, the Ninth Circuit found the government did not act in bad faith and denied the defendant's motion to dismiss the indictment for spoliation. 714 F.3d at 1170. During a secondary inspection at the border, authorities discovered that the defendant's vehicle contained a hand-cut section of the engine manifold, which had been modified to conceal a substantial quantity of illegal drugs. *Id.* The case agent and a mechanic spent approximately two hours removing the drugs and took low-quality photographs of the engine. *Id.* The vehicle itself, however, was never seized. *Id.* The court held the government's failure to preserve the vehicle, while negligent, did not constitute bad faith because the evidentiary value of the vehicle "was not obvious" and "[a]ny exculpatory value of the [vehicle] itself was not apparent." *Id.* at 1172.

In the present case, Lewis contends his due process rights were violated when law enforcement failed to preserve the liquid contained in the bottles and left them

6

unattended and exposed to the elements for nearly three weeks. (Doc. 85 at 4). While acknowledging the potential danger of transporting the liquid, Lewis argues that officers could have safely dismantled the alleged Molotov cocktails and collected each component for testing. (*Id.* at 5). The Government responds that Lewis cannot satisfy the bad-faith requirement because the decision to discard the bottles' contents was motivated by public safety concerns and the officers had no reason to believe the liquid possessed any exculpatory value. (Doc. 96 at 6–7).

The Court agrees with the Government. Unlike in *Zaragoza-Moreira*, the officers here were never placed on notice that the liquid inside the Molotov cocktails might have exculpatory value. At the time, they were investigating a suspected homicide and had no knowledge that Lewis would later face charges involving the possession or use of explosive devices. The officers' disposal of the liquid does not appear to rise even to the level of negligence present in *Sivilla*, as their observations indicated the liquid was inculpatory evidence. The liquid smelled of kerosene, a known combustible substance commonly used in homemade explosive devices. Testimony from PCSO Detectives Green and Hopkin at the hearing confirmed that the officers did not empty the bottles out of bad faith or with the intent to destroy evidence, but instead acted out of reasonable safety concerns to prevent an explosion or fire during transport of the travel trailer. Accordingly, the Court finds that the bad-faith element is not satisfied.

### B. Ability to Obtain Comparable Evidence

In addition to finding no bad faith, the Court concludes that the second element of the spoliation test also favors the Government. Although law enforcement emptied most of the liquid from the bottles at the scene, a sufficient amount remained for the FBI lab to test and confirm that the substance was flammable. Lewis has not explained how possessing a greater volume of liquid, which was already determined to be flammable, would be necessary to assess any potential exculpatory value. FBI Special Agent Deurmeier testified that the FBI lab retains a portion of the recovered liquid, which remains available for testing. While the liquid was left outside and exposed to the elements after the initial search of Lewis's travel trailer, Lewis has offered no evidence or argument showing that such exposure rendered the substance untestable. Nor has he adequately explained why the remaining liquid cannot be analyzed to determine any potential exculpatory qualities. The length of time the evidence was exposed to the elements bears on the weight of the evidence, not its admissibility, and is therefore a matter for the jury to consider at trial.

/ / /

/ / /

/ / /

/ / /

## IV. Conclusion

Accordingly, the Court finds no due process violation in law enforcement's decision to empty most of the liquid from the alleged "Molotov cocktails."

IT IS HEREBY ORDERED that Defendant Kadin Hawkeye Lewis's Motion to Dismiss (Doc. 84) is DENIED.

DATED this 29th day of September, 2025.

_Susan P. Watters_
SUSAN P. WATTERS
United States District Judge