IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KADIN HAWKEYE LEWIS,<br><br>Defendant. | CR 23-143-BLG-SPW<br><br>ORDER ON MOTION TO<br>SUPPRESS |

Before the Court is Defendant Kadin Hawkeye Lewis's Motion to Suppress. (Doc. 86). Lewis asserts that the two state court search warrants are constitutionally deficient because they fail to establish probable cause, lack sufficient particularity in describing the items to be seized, and are impermissibly overbroad. (Doc. 87 at 1–2). Based on these alleged deficiencies, Lewis seeks suppression of all evidence obtained pursuant to the warrants. (*Id.*).

The Government opposes the Motion. (Doc. 94). The Court held a hearing on this Motion, along with Lewis's other pending motions (Docs. 81, 84), on September 5, 2025. Testimony was provided by FBI Special Agent Matthew Deurmeier and Park County Sheriff's Office (PCSO) Detectives Brian Green and Jason Hopkin. For the following reasons, the Court denies Lewis's Motion.

1

## I.    Background

On September 19, 2022, property owner Chad Standish contacted PCSO dispatch to report the discovery of a deceased individual inside a travel trailer located on his property. (Doc. 95-1 at 2). Standish described the body as appearing "beaten up." (*Id.* at 6). When PCSO deputies arrived at the scene, Standish directed them to a white Road Ranger Extreme travel trailer. (*Id.*). Standish had previously pried open one of the trailer doors, which allowed PCSO deputies to view the body of a deceased man inside. (*Id.*). Officers observed blood spatter on the trailer's doors, walls, and ceiling, and noticed visible head wounds on the victim. (*Id.*).

Detective Green then prepared a search warrant application for the travel trailer. (*Id.* at 7). The application identified the suspected offense as Deliberate Homicide under Montana Code Annotated § 45-5-102. (Doc. 88-1 at 2). It outlined a broad range of potential evidence relevant to the investigation: "DNA, blood, firearms, ammunition, firearms accessories, shell casings, clothing, human tissue, gun shot residue, photographs, hair, edged weapons, bullets, cell phones, electronics, computers, recording devices, cameras, dangerous weapons, fingerprints, personal papers and effects." (*Id.*). The trailer was specifically listed as the location to be searched. (*Id.*).

In support of the warrant, the application set forth the following facts: (1) Chad Standish contacted PCSO dispatch to report the discovery of a deceased

2

individual; (2) the individual's body appeared to be "beaten up"; (3) the body was located inside a travel trailer on Standish's property; (4) responding officers confirmed the presence of a deceased man in the trailer; and (5) the death "may have been the result of foul play." (*Id.*).

Following the presentation of supporting facts, Detective Green detailed his approximately 15 years of law enforcement experience and training. (*Id.* at 3). He also stated that based on his experience and training, he understood that "DNA can be left as evidence at a crime scene in many forms, including in tissue, hair, blood, saliva, urine, sweat, mucus, ear wax, semen, and from vaginal or rectal cells." (*Id.*). Based on the information provided, Montana District Court Judge Brenda R. Gilbert approved the search warrant application. (*Id.* at 5).

As the search commenced, officers observed white supremacist and Nazi-related rhetoric written on the bedroom walls. (Doc. 95-1 at 7). On the trailer bed, officers located a green camouflage duffel. (*Id.*). Inside the bag, they discovered multiple pages of loose handwritten material detailing Lewis's apparent fascination with school shooters and mass shootings. (*Id.*; Doc. 95-5 at 4–5). The writings described Lewis's specific plans to carry out attacks at a high school and Chico Hot Springs. (Doc. 95-5 at 4–5). In addition to these materials, officers recovered several other handwritten documents, including a journal and a red diary. (Doc. 95-1 at 7–8).

The duffel bag also contained a black plastic mask, a partial box of .22 caliber ammunition, a Glock .45 magazine, and a .22 caliber ten-shot revolver. (*Id.* at 7). Upon inspection, officers observed red splatter on the revolver's barrel and noted a spent casing lodged in the cylinder. (*Id.*).

As officers continued their search, they located seven fully assembled Molotov cocktails stored in a cabinet above the couch. (*Id.*). Each device consisted of a bottle, a cloth wick, and liquid fuel that smelled like kerosene. (*Id.*). Additionally, officers recovered a green fabric bag containing soda bottles fitted with cloth wicks, resembling incomplete or partially constructed Molotov cocktails. (*Id.*).

Following the initial search, Detective Green submitted a second search warrant that mirrored the original, with the sole addition of Lewis's travel trailer to the list of items to be seized. (Doc. 88-2 at 1). Judge Gilbert approved the warrant, and the trailer was subsequently seized and towed to a storage facility. (Doc. 95-1 at 8).

On November 21, 2022, FBI Special Agent Matthew Deurmeier obtained a federal search warrant authorizing further examination of the trailer. (Doc. 95-3 at 1). The warrant was issued by United States Magistrate Judge Timothy J. Cavan. (*Id.*). Agent Deurmeier sought evidence related to charges of Possession of an Unregistered Firearm and Destructive Device under 26 U.S.C. § 5861(d). (*Id.* at 6). Further, based on law enforcement's observations of white supremacist rhetoric on

4

the trailer's interior walls and Lewis's written materials, the warrant asserted probable cause to believe that Lewis's possession of unregistered destructive devices constituted a crime of domestic terrorism under 18 U.S.C. § 2331(5).  (*Id.* at 17).

During the search, Agent Deurmeier seized multiple bottles fitted with wicks, as well as drawings, journals, and a plastic bag containing additional writings that had not been previously recovered.  (Doc. 95-4 at 3).

## II.    Legal Standard

A pretrial challenge to the introduction of evidence at trial is generally considered pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure. "[T]o effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, [the United States Supreme Court] conferred upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968) (citing *Weeks v. United States*, 232 U.S. 383 (1914)).

## III.   Discussion

The Fourth Amendment to the United States Constitution safeguards individuals against unreasonable searches and seizures.  It provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

In this case, the Court concludes the language contained in both search warrants complies with the Fourth Amendment's requirements. The warrants establish sufficient probable cause, satisfy the particularity requirement, and do not suffer from overbreadth.

A.    *Probable Cause*

First, the warrants were supported by probable cause. Probable cause exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of circumstances." *United States v. King*, 985 F.3d 702, 707 (9th Cir. 2021) (quoting *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007)). Importantly, this standard "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It demands less evidence than would be required to sustain a conviction and "may rest upon evidence which is not legally competent in a criminal trial." *United States v. Ventresca*, 380 U.S. 102, 107 (1965) (citations omitted).

Moreover, probable cause must be determined by a neutral and detached magistrate. *Johnson v. United States*, 333 U.S. 10, 14 (1948). Once that determination is made, it is entitled to substantial deference by reviewing courts. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citation omitted). The reviewing court's

role is not to second-guess the magistrate, but to ensure there was a "substantial basis" for concluding that probable cause existed. *King*, 985 F.3d at 708 (quoting *Gates*, 462 U.S. at 238). In making that assessment, "[t]he experience of a trained law enforcement agent is entitled to consideration." *United States v. Arrellano-Rios*, 799 F.2d 520, 523 (9th Cir. 1986).

Affidavits supporting search warrants are "normally drafted by nonlawyers in the midst and haste of a criminal investigation" and thus should not be held to "[t]echnical requirements of elaborate specificity once exacted under common law pleadings." *Ventresca*, 380 U.S. at 109. A "grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *Id.* Rather than adopting a hypertechnical lens, courts reviewing a warrant must interpret the supporting affidavit through a commonsense and realistic perspective. *Id.*

Applying these principles, the Court concludes that the warrants were supported by probable cause. The warrant applications described the discovery of a dead body in Lewis's trailer, along with observations from both Standish and Detective Green indicating potential criminal activity. Standish observed that the body showed evidence of violence and looked "beaten up." Based on his initial investigation, Detective Green indicated that the death "may have been the result of foul play." In assessing whether probable cause existed to believe a homicide

occurred, the court was entitled to consider Detective Green's 15 years of law enforcement experience.

Although the warrants contained relatively limited detail, the discovery of a dead body in Lewis's trailer, accompanied by signs of "foul play," provided a sufficient basis for the court to conclude that probable cause existed to believe a homicide had occurred at that location. The court reasonably concluded that the death resulted from a violent criminal act and that evidence related to the cause of death would likely be found in the trailer where the body was discovered.

### B.    *Particularity and Breadth*

Second, the warrants' identification of both the place to be searched and the items to be seized satisfies the Fourth Amendment's particularity requirement. The Fourth Amendment mandates that warrants must describe both the location to be searched and the persons or property to be seized with sufficient particularity to allow law enforcement to reasonably identify them. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986); *United States v. Brobst*, 558 F.3d 982, 993 (9th Cir. 2009). This requirement exists to prevent "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

To be constitutionally valid, a warrant must be specific in terms of both particularity and breadth. *Brobst*, 558 F.3d at 993. Particularity requires "the warrant [to] clearly state what is sought," while breadth ensures that the search is

8

confined to "the probable cause on which the warrant is based." *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993) (citation omitted).

As to particularity, the law requires that descriptions in a warrant be "reasonably specific," not intricate or "elaborately detailed." *United States v. Brock*, 667 F.2d 1311, 1322 (9th Cir. 1982). The degree of specificity required "varies depending on the circumstances of the case and the type of items involved." *Spilotro*, 800 F.2d at 963.

In determining whether a warrant's description is sufficiently precise, the Ninth Circuit considers three factors:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant;
> (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and
> (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Id.* (citations omitted).

Here, the warrants' descriptions of the place to be searched and items to be seized were sufficiently particular. As an initial matter, the description of the trailer's location was reasonably specific. The warrants authorized the search of a specific white Road Ranger Extreme travel trailer, identified by vehicle identification number, located on a particular property owned by Chad Standish at a specific address on East River Road in Pray, Montana.

Next, the Ninth Circuit's second factor is satisfied because the warrants' descriptions were sufficiently specific to enable a reasonable officer to distinguish the listed items from other property in the trailer, and this point is not genuinely disputed.

The Court turns to the remaining two factors. First, building on its prior conclusion that the warrants were supported by probable cause, the Court finds that probable cause existed to justify the seizure of each item listed. As to the third factor, the Court concludes that the Government could not have described the items with greater precision given the information available at the time the warrants were issued.

The Court will first address the weapons, biological evidence, and technological devices, and then turn to the journal entries. The writings require additional analysis because Lewis challenges the seizure of certain journal entries as overbroad, and the Government invokes the doctrine of plain view—a doctrine not raised in connection with the seizure of the other categories of evidence.

1.      *Weapons, Biological Evidence, and Technological Devices*

Regarding the first factor, probable cause directly linked each category of items to the alleged crime. Firearm-related evidence can reveal how the victim was killed. Likewise, the recovery of biological evidence at the scene of a homicide is plainly reasonable, as such evidence can identify the perpetrator, potential witnesses,

10

and the sequence of events. Items capable of identifying individuals or documenting the scene—such as cell phones, electronics, computers, recording devices, and cameras—could reasonably identify the victim, the perpetrator, or others with access to the area. Common sense supports the conclusion that these items were likely to aid the homicide investigation.

As to the third factor, the items to be seized could not have been described with greater specificity given the information available at the time. Although the warrant encompassed broad categories—such as weapons (including firearms, ammunition, firearms accessories, shell casings, edged weapons, and bullets) and biological evidence (such as DNA, blood, clothing, human tissue, gun shot residue, hair, and fingerprints)—a more detailed description was not feasible due to the limited scope of the investigation conducted before the warrant was issued.

When Detective Green applied for the search warrants, he knew only that a dead body was inside the trailer and that the death was the result of violence. In a homicide investigation, the potential scope of relevant evidence is necessarily broad. As reflected in the warrant application, Detective Green—drawing on his training and experience—understood that DNA and other forensic evidence can take many forms at a crime scene. Given this knowledge, and the limited information available at the time, the Court concludes that Detective Green could not have described the items to be seized with greater specificity.

11

2.    *Journal Entries*

Finally, the search and seizure of the journal entries was sufficiently particular and not overbroad. Lewis contends that "[a]t the very least the search and seizure of the journal entries is facially overbroad." (Doc. 87 at 10). However, under the Ninth Circuit's particularity factors, probable cause supported the seizure of the journal entries. Writings discovered at a homicide scene may identify potential suspects, reveal the suspect's state of mind, or document motives and threats directly related to the crime. Because any form of writing could have contained such evidence, a more particular description—or specifically naming a journal—was impracticable at the time. The Ninth Circuit's requirements are therefore satisfied.

Moreover, the Court agrees with the Government that the seizure of the journal entries also fell within the lawful scope of the search under the plain view doctrine. (*See* Doc. 94 at 20–22). As the Ninth Circuit has recognized, "[w]hen conditions justify an agent in examining a ledger, notebook, journal, or similar item, he or she may briefly peruse writing contained therein." *United States v. Issacs*, 708 F.2d 1365, 1370 (9th Cir. 1983). This authority "may arise from a reasonable suspicion to believe that the discovered item is evidence" or "from the authority conferred by a warrant to search for certain items which might reasonably be expected to be found within such a book." *Id.* (internal citations and quotation marks omitted). "In either case, the plain view doctrine would permit brief perusal of the

12

book's contents and, consequently, its seizure if such perusal gives the examining agent probable cause to believe that the book constitutes evidence." *Id.*

Here, the search warrant—supported by probable cause—placed officers lawfully inside the trailer. While searching for homicide evidence, including weapons and personal papers, they examined a duffel bag where such evidence could reasonably be located. Lewis does not dispute that a search for weapons is inherently reasonable in a homicide investigation, and the writings at issue were discovered in a location where weapons could reasonably have been found. Upon opening the bag, officers observed the journal entries in plain view. A brief perusal revealed their incriminating nature, providing probable cause for seizure. Accordingly, suppression is unwarranted.

## IV.    Conclusion

IT IS HEREBY ORDERED that Defendant Kadin Hawkeye Lewis's Motion to Suppress (Doc. 86) is DENIED.

DATED this _29th_ day of September, 2025.

SUSAN P. WATTERS
United States District Judge

13